[No. 3111–0–III. Division Three. July 29, 1980.]

THE STATE OF WASHINGTON, *on the Relation of Jay Roy Jones, Respondent,* v. CHARBONEAU'S, ET AL, *Appellants.*

*Clinton J. Henderson* (*William Tway,* of counsel), for appellants.

*John M. Lyden, Prosecuting Attorney,* and *Linford Smith, Deputy,* for respondent.

MUNSON, J.—Defendants appeal from a decree enjoining them from maintaining and continuing a business, under the assumed business name of Charboneau's, after finding the business was a moral nuisance pursuant to and defined in RCW 7.48.052(6) as a "place which, as a regular course of business, is used for the purpose of lewdness, assignation, or prostitution, . . ."[1] We reverse and dismiss.

Three undercover officers testified they went to Charboneau's establishment, located in Clarkston, and paid a "standard" fee of $45 for a shower, sauna and "sexual technique analysis." The court found the proof of "sexual therapy . . . was totally insufficient and not persuasive; and that the business maintained at said premises is not legitimate or lawful."

None of the court's findings is challenged; of the five constitutional issues raised, we find one issue is dispositive, *i.e.,* does the ballot title of Initiative 335, now codified in RCW 7.48.050–.100, meet the constitutional requirements of article 2, section 19 of the Washington State Constitution which provides: "No bill shall embrace more than one subject, and that shall be expressed in the title"? We find the title violative of the constitution and dismiss the action.

Initiative 335, approved by the voters November 8, 1977, amended and added to the prior statutes relating to

---

[1]Since this case was tried and appealed within the framework of Initiative 335 as codified in RCW 7.48.050–.100, we do not discuss the applicability of RCW 7.48.240, captioned: "Certain places of resort declared nuisances," or RCW 7.48-.250, captioned: "Penalty—Abatement."

nuisances.[2] Moral nuisances are defined as those places which sell or exhibit lewd films and publications, and also places where prostitution, lewdness, illegal gambling, drunkenness, fighting or opium smoking is permitted. RCW 7.48.052.

By statute, the Attorney General is required to formulate an official ballot title of no more than 20 words which shall express "a true and impartial statement of the purpose of the measure; . . ." which is then transmitted to the Secretary of State. RCW 29.79.040. The Secretary of State certifies that ballot title to the county auditors to be placed on the ballot at the next general or special election. RCW 29.79.230. The ballot title of Initiative 335 issued by the Attorney General January 28, 1977, read as follows:[3]

> Shall places where obscene films are publicly and regularly shown or obscene publications a principal stock in trade be prohibited?

■ Initially we must decide whether the constitutional provision applies to initiatives. In *Senior Citizens League, Inc. v. Department of Social Security,* 38 Wn.2d 142, 228 P.2d 478 (1951), the court ruled that the constitutional provision did not apply to initiative measures. *Cf. State ex rel. Seymour v. Superior Ct.,* 168 Wash. 361, 364, 12 P.2d 394 (1932). This position, however, was substantially weakened, if not rejected outright, by six judges in *Fritz v. Gorton,* 83 Wn.2d 275, 517 P.2d 911 (1974). In *Yelle v. Kramer,* 83 Wn.2d 464, 470, 520 P.2d 927 (1974),[4] an *ad hoc*

---

[2]We note that those sections of Initiative 335 relating to sale of obscene films and publications has been declared unconstitutional insofar as the procedures impose prior restraint. *Spokane Arcades, Inc. v. Ray,* 449 F. Supp. 1145 (E.D. Wash. 1978), *cert. denied,* 444 U.S. 965, 62 L. Ed. 2d 377, 100 S. Ct. 452 (1979); *cf. Vance v. Universal Amusement Co.,* 445 U.S. 308, 63 L. Ed. 2d 413, 100 S. Ct. 1156 (1980). However, the challenge to the ballot title has not been previously addressed.

[3]A certified copy of the ballot title was furnished to this court by the Secretary of State.

[4]An interesting discussion of *Yelle v. Kramer, supra,* is found in C. Sheldon & F. Weaver, *Politicians, Judges and the People* (1980).

8

Supreme Court in passing upon the validity of an initiative noted at page 470 that *Fritz v. Gorton, supra,* "throws some doubt upon the efficacy of *Senior Citizens.*" The passage of an initiative, by the people, is an exercise of the same power of sovereignty as the passage of a law by the legislature. "Each is simply the exercise of the legislative power of the state." *State v. Paul,* 87 Wash. 83, 90, 151 P. 114 (1915). *See Love v. King County,* 181 Wash. 462, 44 P.2d 175 (1935). *See also* Trautman, *Initiative and Referendum in Washington: A Survey,* 49 Wash. L. Rev. 55, 66 (1973–74). "All laws on any subject whatever, *enacted by either the people or the legislature,* must be governed by the provisions of the constitution . . ." *Yelle v. Kramer, supra* at 472, quoting from *Culliton v. Chase,* 174 Wash. 363, 373–74, 25 P.2d 81 (1933). Thus, we conclude that the people acting in their legislative capacity through the initiative process are governed by article 2, section 19 of the Washington State Constitution.

Appellant contends the ballot title did not express the subject of the initiative; respondent assumes the title in issue is not the ballot title, but the initiative title. The initiative title is that title filed with the Secretary of State by the proponents of the initiative. Here, the initiative title read: "AN ACT Relating to moral nuisances; amending . . ." certain chapters and sections of the prior statute.[5] We believe it is the ballot title and not the initiative title which must meet the constitutional requirements of Const. art. 2, § 19 for several reasons: First, it is the ballot title which is

---

[5]A certified copy of the initiative title and initiative text was furnished to this court by the Secretary of State:

"AN ACT Relating to moral nuisances; amending section 1, chapter 127, Laws of 1913 and RCW 7.48.050; amending section 2, chapter 127, Laws of 1913 and RCW 7.48.060; amending section 3, chapter 127, Laws of 1913 and RCW 7.48-.070; amending section 4, chapter 127, Laws of 1913 and RCW 7.48.080; amending section 5, chapter 127, Laws of 1913 as amended by section 1, chapter 94, Laws of 1927 and RCW 7.48.090; amending section 6, chapter 127, Laws of 1913 as amended by section 2, chapter 94, Laws of 1927 and RCW 7.48.100; and adding new sections to chapter 127, Laws of 1913 and to chapter 7.48 RCW."

mandated by the legislature to be a true and impartial statement of the proposed measure. RCW 29.79.040. Second, it is the ballot title, prepared by the Attorney General, which can be appealed to the superior court prior to election. RCW 29.79.060. Third, it is the ballot title which thereafter appears on petitions and on the ballot, RCW 29.79.070, and appears prominently and foremost in the voters' pamphlet. RCW 29.81.010(1)(b). None of these statutes refers to the initiative title prepared by the proponents, nor is the initiative title required to appear on petitions, ballots or in the voters' pamphlets. Finally, the ballot title is what the public sees and what many rely upon in casting their votes. As observed in *In re Ballot Title for Initiative 333*, 88 Wn.2d 192, 198, 558 P.2d 248, 559 P.2d 562 (1977):

> We can safely assume that not all voters will read the text of the initiative or the explanatory statement. Some voters may cast their votes based on the ballot title as it appears on their ballots. Thus, the outcome of the vote may be affected by the tenor of the ballot title.

We find that the ballot title is the title which must meet the state constitutional requirement of article 2, section 19.

 A ballot title which refers only to places selling or exhibiting "obscene films" and "obscene publications" when the body of the initiative includes places of prostitution, illegal gambling, fighting and opium smoking does not meet the constitutional requirement that the title express the subject of the bill or initiative. A ballot title as well as a legislative bill title should give "notice that would lead to an inquiry into the body of the act, or indicate to an inquiring mind the scope and purpose of the law." *YMCA v. State*, 62 Wn.2d 504, 506, 383 P.2d 497 (1963); *State ex rel. Washington Toll Bridge Auth. v. Yelle*, 32 Wn.2d 13, 200 P.2d 467 (1948); *Tri-M Erectors, Inc. v. Drake Co.*, 25 Wn. App. 264, 606 P.2d 709 (1980). The ballot title here implies only places dealing in obscene films and publications will be prohibited.

The purpose of a title is to call attention to the subject matter of the act, so that anyone reading it may know what matter is being legislated upon, and is sufficient when it is broad enough to accomplish that purpose.

*Randles v. State Liquor Control Bd.,* 33 Wn.2d 688, 695, 206 P.2d 1209, 9 A.L.R.2d 846 (1949); *Maxwell v. Lancaster,* 81 Wash. 602, 143 P. 157 (1914); *Lancey v. King County,* 15 Wash. 9, 45 P. 645 (1896).

If a title is general and comprehensive, it will be liberally construed; but if the title is restrictive, those provisions not within the title will not be given force. *State ex rel. Toll Bridge Auth. v. Yelle, supra* at 26; *Power, Inc. v. Huntley,* 39 Wn.2d 191, 198–203, 235 P.2d 173 (1951); *Tri–M Erectors, Inc. v. Drake Co., supra.* After an extensive review of prior cases dealing with general and restrictive titles, the court stated in *Gruen v. State Tax Comm'n,* 35 Wn.2d 1, 22–23, 211 P.2d 651 (1949):

A general title may be said to be one which is broad and comprehensive, and covers all legislation germane to the general subject stated. It is not an objection that it covers more than the subject of the body of the act, but it must not, in any event, cover less. It is not necessary that it index the details of the act, or give a synopsis of the means by which the object of the statute is to be accomplished. All matters which are germane to the subject may be embraced in one act. Under the true rule of construction, the scope of the general title should be held to embrace any provision of the act, directly or indirectly related to the subject expressed in the title and having a natural connection thereto, and not foreign thereto. Or, the rule may be stated as follows: Where the title of a legislative act expresses a general subject or purpose which is single, all matters which are naturally and reasonably connected with it, and all measures which will, or may, facilitate the accomplishment of the purpose so stated, are properly included in the act and are germane to its title.

On the other hand, a restrictive title is one where a particular part or branch of a subject is carved out and selected as the subject of the legislation. If the legislature seeks this method, and notwithstanding a general title

could have been adopted which would have covered the entire subject and authorized legislation upon the whole of it, the body of the act must be confined to the particular portion of the subject which is expressed in the limited title. The courts cannot enlarge the scope of the title. They are invested with no dispensing power. The constitution has made the title the conclusive index to the legislative intent as to what shall have operation. It is no answer to say that the title might have been more comprehensive, if, in fact, the legislature has not seen fit to make it so.

*See Water Dist. 105 v. State,* 79 Wn.2d 337, 485 P.2d 66 (1971); *Kueckelhan v. Federal Old Line Ins. Co.,* 69 Wn.2d 392, 418 P.2d 443 (1966); 42 Am. Jur. 2d § 46, at 693 (1969).

We find the restrictive ballot title here was insufficient to give notice to the public of the initiative subject upon which the public was voting. Thus, we hold that Initiative 335, as codified in RCW 7.48.050–.100 is unconstitutional and violates article 2, section 19 of the Washington State Constitution.

Judgment reversed and complaint dismissed.

GREEN, C.J., and ROE, J., concur.

Reconsideration denied September 3, 1980.

Review denied by Supreme Court November 7, 1980.