[No. 22867–6–I.  Division One.  January 29, 1990.]

*In the Matter of* BORIS V. KORRY TESTAMENTARY MARITAL DEDUCTION TRUST FOR WIFE.

MERWIN E. CASEY, ET AL, *Respondents,* v. FRED HUTCHINSON CANCER RESEARCH CENTER, INC., ET AL, *Appellants,* VAL KORRY, ET AL, *Respondents.*

*Ladd B. Leavens* and *Davis Wright & Jones; Rudy A. Englund* and *Lane Powell Moss & Miller,* for appellants.

*Elizabeth Thomas* and *Preston, Thorgrimson, Ellis & Holman; Kevin P. Casey* and *Casey, Gordon & Cohen,* for respondents.

WINSOR, J.—Fred Hutchinson Cancer Research Center and Children's Orthopedic Hospital and Medical Center (hereinafter the Charities) appeal a declaratory judgment that a testator did not validly exercise her testamentary power of appointment in accord with former RCW

11.95.060.[1] Had the testator validly exercised her power, the Charities would have received trust property valued at more than $400,000. We affirm.

Boris Korry died in 1974. His will created a "Marital Deduction Trust" in favor of his wife, Alice [Korry] Clark,[2] and granted her a testamentary power of appointment over the trust. In relevant part Mr. Korry's will provided that upon Mrs. Clark's death, the trustees of the marital deduction trust

shall distribute the then principal of this marital trust . . . to or for such person or persons as my said wife may, *by specific reference hereto,* in her Last Will direct and appoint, . . . and in default of any such appointment, the same shall be added and consolidated with the Family Trust established in Article VII hereof . . ..

(Italics ours.)

Mrs. Clark died in 1987 and her will, dated August 5, 1986, was admitted to probate in King County, Washington. Mrs. Clark's will contains a "Gift of Residue" clause which states in pertinent part:

All the rest of my property, *including property over which I hold a power of appointment,* I give . . . and appoint in equal shares to [the Charities].

(Italics ours.)

The issue is whether Mrs. Clark validly exercised her power of appointment over the marital deduction trust, and thus whether the trust funds should be given to the Charities, or consolidated with the family trust pursuant to the default provision of Mr. Korry's will. The trustees of the marital trust brought this action for a declaration of rights,

---

[1]RCW 11.95.060 was amended effective July 23, 1989. Laws of 1989, ch. 33. Under the amendments, Mrs. Clark's attempt to exercise her power of appointment may have been statutorily valid. We do not address whether the amendment applies retroactively, however, as that issue is not before us.

[2]After Korry's death, his wife remarried. For clarity, she is referred to as Mrs. Clark throughout this opinion.

naming the Charities and the beneficiaries of the Korry family trust (hereinafter the Children)[3] as defendants.

The trial court concluded that although Mrs. Clark exercised her power of appointment in accord with Mr. Korry's will,[4] her exercise did not comply with former RCW 11.95-.060(2). That statute required the holder of a testamentary power to exercise the power by a will "that manifests an intent to exercise the power and that *identifies the instrument* granting the power and *its date*." (Italics ours.) Former RCW 11.95.060(2). Accordingly, the court ordered consolidation of the marital trust into the family trust. It also refused the Charities' fee award request, and ordered that the Children's fees be paid from the marital deduction trust corpus.

### TRUST DISPOSITION

On appeal, the Charities challenge on several grounds the trial court's ruling that Mrs. Clark's exercise of her power of appointment was statutorily invalid. We choose to address only their contention that RCW 11.95.060(2) was enacted in violation of Const. art. 2, § 19, as we find their remaining contentions to be clearly without merit.

RCW 11.95.060 was originally enacted in a bill entitled "Trust Law Revised", and described as "AN ACT Relating to trusts . . .". Laws of 1984, ch. 149. In 1985, the Legislature divided the trust act into smaller chapters and reenacted its provisions. RCW 11.95.060 was reenacted in a bill entitled "Trust Act—Fiduciaries—Technical Corrections". Laws of 1985, ch. 30.

The Charities contend that to include power of appointment provisions in these acts violates the title and one subject requirements of Const. art. 2, § 19. Const. art. 2, §

---

[3]The beneficiaries of the Korry family trust were Mr. Korry's children from a prior marriage.

[4]The Children challenge this conclusion in their cross appeal. Given our resolution of the statutory issue, we need not address their challenge.

19 states: "No bill shall embrace more than one subject, and that shall be expressed in the title."

█ In analyzing a bill under Const. art. 2, § 19, the court must keep the following principles in mind:

> First, the statute is presumed to be constitutional and the challenger bears a heavy burden to overcome that presumption. Second, article 2, section 19 is to be liberally construed in favor of the validity of the legislation.

*State Fin. Comm. v. O'Brien,* 105 Wn.2d 78, 80, 711 P.2d 993 (1986). Additionally, due to the respect afforded the decisions of our independent and coequal branch, the court recognizes the Legislature's wide discretion to select bill titles and subject matter. *O'Brien,* 105 Wn.2d at 80–81.

> [T]he legislature is deemed the judge of the scope which it will give to the word "subject." So long as the title embraces a general subject, it is not violative of the constitution even though the general subject contains several incidental subjects or subdivisions. All that is required is that there be some "rational unity" between the general subject and the incidental subdivisions. If this nexus can be found, the act will survive the light of constitutional inspection.

(Citations omitted.) *O'Brien,* 105 Wn.2d at 81 (quoting *Kueckelhan v. Federal Old Line Ins. Co.,* 69 Wn.2d 392, 403, 418 P.2d 443 (1966)). Thus, if a title is general and comprehensive, it will be liberally construed to embrace any provision "directly or indirectly related to the subject expressed in the title and having a natural connection thereto".[5] *Gruen v. State Tax Comm'n,* 35 Wn.2d 1, 22, 211 P.2d 651 (1949).

█ Here, the titles of the acts at issue reference the general subject of trusts. Consequently, the ultimate issue before us is whether there is some "rational unity" or "natural connection" between a trust and a power of appointment. We hold that there is, and that the enactments at

---

[5]If a title is restrictive, however, the court will not enlarge its scope, and provisions not within the title will not be given force. *Gruen v. State Tax Comm'n,* 35 Wn.2d 1, 23, 211 P.2d 651 (1949); *State ex rel. Jones v. Charboneau's,* 27 Wn. App. 5, 10–11, 615 P.2d 1321 (1980).

issue satisfy the title and subject requirements of article 2, section 19.

We so hold because, although trusts and powers of appointment are legally distinguishable, they are conceptually similar, and in fact are frequently confused. *E.g., In re Estate of Lidston,* 32 Wn.2d 408, 419–21, 202 P.2d 259 (1949); 62 Am. Jur. 2d *Powers* § 4 (1972); 76 Am. Jur. 2d *Trusts* § 5 (1975). Both powers and trusts involve a direction from one person to another to deal with property in a certain way, and both are frequently used as tax and estate planning devices. Indeed, major trust treatises generally include detailed discussions of powers of appointment. *See generally* G. Bogert, *Trusts and Trustees* (2d ed. 1985); A. Scott & W. Fratcher, *Trusts* (4th ed. 1987–1989); Restatement (Second) of Trusts (1959).

Moreover, the alleged constitutional violations at issue here simply do not compare with the rare cases in which a violation of the constitutional provision has been found. Typically, those cases involve extreme and obvious violations of article 2, section 19. For example, in *Barde v. State,* 90 Wn.2d 470, 584 P.2d 390 (1978), the court held that there was no rational unity between a provision concerning recovery of attorney fees in a civil replevin action, and imposition of criminal sanctions for dognapping. In *State v. Tieman,* 32 Wash. 294, 73 P. 375 (1903) and *State ex rel. Henry v. Macdonald,* 25 Wash. 122, 64 P. 912 (1901), the court held that it violates the constitution to include civil and criminal provisions within the same act when the act title references only the civil, or criminal, component. In *Flanders v. Morris,* 88 Wn.2d 183, 558 P.2d 769 (1977), the court struck down a substantive public assistance provision contained within a general appropriations bill. Finally, in *State ex rel. Jones v. Charboneau's,* 27 Wn. App. 5, 7, 615 P.2d 1321 (1980), the court held it unconstitutional to declare prostitution, lewdness, illegal gambling, drunkenness, fighting or opium smoking to be a moral nuisance within an initiative entitled: "Shall places

where obscene films are publicly and regularly shown or obscene publications a principal stock in trade be prohibited?"

## ATTORNEY FEES

Both parties challenge the trial court's fee award rulings. The court denied the Charities' fee request, and awarded the Children their fees from the trust corpus, rather than charging them to the Charities.

RCW 11.96.140 provides that in probate proceedings, either the appellate court or superior court "may, in its discretion, order costs, including attorneys fees, to be paid by any party to the proceedings or out of the assets of the estate, as justice may require." A decision under this statute "will not be overturned on review except on a clear showing of abuse of . . . discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *In re Estate of Eubank,* 50 Wn. App. 611, 621, 749 P.2d 691 (1988).

The Charities argue that their participation in the instant litigation benefited the estate by aiding in the proper construction of Mrs. Clark's will, and that it was therefore an abuse of discretion to deny them their attorney fees. They rely on *Allard v. Pacific Nat'l Bank,* 99 Wn.2d 394, 407, 663 P.2d 104 (1983), where the court held that the underlying consideration in awarding fees in trust litigation is "whether the litigation and the participation of the party seeking attorney fees caused a benefit to the trust."

Because *Allard* was not decided under RCW 11.96.140, it is not directly controlling. Nevertheless, we conclude that it is appropriate for courts to consider the benefit to the trust as a factor in fee award cases under RCW 11.96.140. This is the approach taken in California, whose statute served as a model for RCW 11.96.140. *In re Estate of Bloom,* 107 Cal. App. 3d 195, 165 Cal. Rptr. 591 (1980); Senate Journal, 48th Legislature (1984), appendix A: 1984 Trust Act Comments § 57, at 1732.

The trial court considered the Charities' "benefit to the trust" argument, and rejected it, stating:

I do not believe that the benefit to the trust that was achieved by this litigation is the kind of benefit that was being contemplated in those cases. . . . There is a clarification of the trustee's duties which comes out of it, but there is always clarification of the trustee's duties where there is litigation concerning the trust.

We agree. A "benefit to the trust" can be found in litigation that exposes a trustee's breach of fiduciary duties, *e.g.*, *Allard,* 99 Wn.2d at 407–08, or permits the continued operation of a trust, *Peoples Nat'l Bank v. Jarvis,* 58 Wn.2d 627, 631, 364 P.2d 436 (1961). It will rarely be present, however, when, as here, the litigation was unsuccessful and primarily prosecuted for personal benefit. *See Allard,* 99 Wn.2d at 407–08; *Chapin v. Collard,* 29 Wn.2d 788, 797, 189 P.2d 642 (1948); *Bloom,* 165 Cal. Rptr. at 594–95. Accordingly, we cannot hold that the trial court abused its discretion in refusing the Charities' request for attorney fees.

Nor can we hold that the trial court abused its discretion in allowing the Children's fees, and ordering that they be paid from the trust. Contrary to the Charities' argument, the Children's and the trustees' trial fees were not so duplicative as to warrant denial of the Children's fee request. The record indicates that much of the Children's fees result from the leading role their attorney took in the early stages of litigation; whereas most of the trustees' fees result from trial preparation and actual trial. We are also not persuaded by the Children's argument that it was an abuse of discretion to award them their fees from the trust, rather than from the Charities. We find no evidence of bad faith on the part of the Charities, and they made a plausible argument that RCW 11.95.060 violates Const. art. 2, § 19. Moreover, the Charities are already heavily burdened by their own fees and costs.

The judgment is affirmed. For the reasons stated herein, the Charities' request for fees incurred on appeal is denied,

and the Children and trustees are awarded their fees, in the amounts requested, from the trust corpus.

PEKELIS and FORREST, JJ., concur.

Review denied at 114 Wn.2d 1021 (1990).