[No. 23554-1-I. Division One. May 7, 1990.]

GLORIA A. MCDONALD, *Respondent,* v. NANCY MCDONALD MOORE, *Petitioner.*

*M. Kathryn Lee,* for petitioner.

*George Livesey,* for respondent.

WINSOR, J.—Nancy Moore seeks review of a trial court order denying her cross motion for summary judgment. By that motion, Moore sought dismissal of Gloria McDonald's action for specific performance of a testamentary option clause.

There is no right of appeal from an order denying summary judgment. *Sea–Pac Co. v. United Food & Comm'l Workers Local Union 44,* 103 Wn.2d 800, 801–02, 699 P.2d 217 (1985); *Roth v. Bell,* 24 Wn. App. 92, 104, 600 P.2d 602 (1979). However, a notice of appeal from such an order will be treated as a notice for discretionary review. RAP 5.1(c). Discretionary review may be granted when "'the superior court has committed an obvious error which would render further proceedings useless". *Sea–Pac,* 103 Wn.2d at 802 (quoting RAP 2.3(b)(1)). Such error occurred here.

Clyde McDonald died testate in 1986. Under his will and a subsequent codicil, Mr. McDonald bequeathed most of his separate and community property to his second wife, Gloria McDonald. Mr. McDonald bequeathed Moore, his daughter from his first marriage,

all my interest in my real property and mobile home thereon located at 4759 Sucia Drive, Ferndale Washington . . ..

. . . .

SUBJECT TO: A gift of a continuing option to my beloved wife, GLORIA ANNE MC DONALD, during her life time to purchase said property, including the mobile home, at the fixed price of $40,000.00.

It is uncontroverted that the fair market value of the Sucia Drive property was $83,500 at the time of Mr. McDonald's death, and that the property was then encumbered by a

mortgage of approximately $39,900. Moore took the property subject to the encumbrance.[1]

In August 1988, McDonald attempted to exercise her option on the Sucia Drive property by paying off the mortgage and giving Moore the "difference between the $40,000.00 stated option price and the exact balance owing [the mortgagee] as of the date of closing," *i.e.,* she would pay Moore about $100. Moore refused to transfer the property under these terms. She insisted that McDonald could exercise the option only by paying her the full $40,000 and assuming the mortgage.

McDonald filed a "Complaint for Specific Performance Requiring Defendant [Moore] to Issue a Deed to Plaintiff" pursuant to her interpretation of Mr. McDonald's will. She then moved for summary judgment. Moore filed a cross motion in which she sought dismissal of McDonald's claims, a declaration that the option clause was an unreasonable restraint on alienation and therefore void, or a declaration that the option clause required McDonald to assume the mortgage and pay Moore $40,000. The trial judge concluded that a hearing to determine Mr. McDonald's intent was necessary and denied both motions. This was error.

The primary duty of a court called upon to interpret a will is to determine the testator's intent at the time he or she executed the will. The testator's intent must, if possible, be derived from the four corners of the will and the will must be considered in its entirety. *E.g., In re Estate of Mell,* 105 Wn.2d 518, 524, 716 P.2d 836 (1986). A testator is presumed to have known the law in force when the will was drafted and to have drafted the will in conformity with that law. Consequently, if a will in ambiguous, the law when the instrument was drafted is a circumstance to consider in determining the testator's intent. *Fischer v. La Fave,* ___

---

[1] The codicil to Mr. McDonald's will provides for payment of all of his just debts from the residue of his estate, except "any obligation(s) secured by a voluntary encumbrance on real property and improvements thereon, for which obligations(s) the encumbered real property and improvements shall be the first and primary source of payment . . .."

Ill. App. 3d __, 544 N.E.2d 55, 57 (1989), *appeal denied,* 550 N.E.2d 555 (1990); *see also Estate of Mell,* 105 Wn.2d at 524–25; *In re Estate of Patton,* 6 Wn. App. 464, 471, 494 P.2d 238 (1972).

Mr. McDonald's will is ambiguous as to how he intended the option clause to be exercised. However, when the option clause is read in conjunction with applicable law, his intent can be determined as a matter of law. The Sucia Drive property was Mr. McDonald's separate property. Neither McDonald nor Moore had any interest in the property except as was bequeathed them by Mr. McDonald. Therefore, they both obtained a right to this property solely as Mr. McDonald's "devisees". Accordingly, RCW 11.12.070 applies to them both and is controlling here:

> When any real or personal property subject to a mortgage is specifically devised, the devisee shall take such property so devised subject to such mortgage unless the will provides that such mortgage be otherwise paid. . . .

Under this provision, Moore received a fee interest in the Sucia Drive property, subject to the mortgage, and McDonald received a right to purchase that property for $40,000, subject to the mortgage.[2]

Moore's alternative contention below and on appeal is that the fixed–price testamentary option is void as an unreasonable restraint on alienation. This is a matter of first impression in Washington.[3] We note that courts in other states have held that a testamentary fixed–price option does not violate the rule against perpetuities or unlawfully restrict the power of alienation. *See generally*

---

[2]Even if we were not convinced that RCW 11.12.070 is dispositive, we would still reverse the trial court. The evidence proffered by McDonald to support her interpretation of the testamentary clause is completely unpersuasive.

[3]Moore relies on cases concerning fixed–price preemptive rights. *E.g., Tombari v. Blankenship–Dixon Co.,* 19 Wn. App. 145, 574 P.2d 401 (1978). *But see Lawson v. Redmoor Corp.,* 37 Wn. App. 351, 679 P.2d 972 (1984). Those cases are inapplicable because preemptive rights differ materially from options. An option creates in the optionee the power to compel sale, whereas a preemption requires the owner to offer the property to the preemptioner when and if the owner decides to sell. *Robroy Land Co. v. Prather,* 95 Wn.2d 66, 70, 622 P.2d 367 (1980).

Annot., *Option Created by Will To Purchase Real Estate,* 44 A.L.R.2d 1214, 1228–30 (1955); 61 Am. Jur. 2d *Perpetuities and Restraints on Alienation* § 120 (1981). Two cases are illustrative.

In *Mattern v. Herzog,* 367 S.W.2d 312 (Tex. 1963), the court considered a testamentary provision leaving real property to decedent's children equally, but giving one child the option to purchase the others' property at a fixed price. The court held that the option provision was not an unlawful restraint on alienation. It reasoned that in the case of an option, a direct disabling restraint is not involved and thus an option does not fit into the usual classifications of restraints upon alienation. 367 S.W.2d at 319. Moreover, the court reasoned, even if the option was a restraint on alienation, the restraint imposed was reasonable, given that a testamentary option is not a socially undesirable device. 367 S.W.2d at 320.

A Kansas court employed somewhat different reasoning to uphold a testamentary fixed–price option. It reasoned that

> the option . . . is personal and exercisable, if at all, only during the lifetime of the named optionees. So construed, the option may be executed only during lives in being, which we cannot regard, in itself, as an unreasonable period of restriction upon alienation. Moreover, it has been held that an option does not suspend the power of alienation where the parties are in being and ascertainable, and can together convey the entire title.

*In re Estate of Maguire,* 204 Kan. 686, 690, 466 P.2d 358, 361, *modified on other grounds,* 206 Kan. 1, 476 P.2d 618 (1970). The *Maguire* court distinguished contractual options from testamentary options, noting that in testamentary litigation, the intent of the testator "is always of paramount concern." 204 Kan. at 690.

We find these cases persuasive and decline to hold that the testamentary option at issue here is void as an unreasonable restraint on alienation. The order denying summary judgment is reversed, and the trial court is directed to enter a declaratory judgment that McDonald may exercise her option by paying $40,000 to Moore and taking the

property subject to the mortgage granted by Mr. Mc-Donald.

█ Moore requests an award of attorney fees pursuant to RCW 11.96.140. Under this provision, attorney fees may be allowed any party, to be assessed against the estate or any other party as the trial court or this court, in its discretion, finds appropriate. Here, it would not be appropriate to assess fees against the estate, since this litigation resulted in no substantial benefit to the estate. *See In re Boris V. Korry Testamentary Marital Deduction Trust for Wife*, 56 Wn. App. 749, 755–56, 785 P.2d 484 (1990). It is appropriate, however, to assess fees against McDonald. McDonald instigated this litigation; Moore was entitled to judgment vindicating her position. Moore addressed the issue of attorney fees in a cogent and helpful fashion in her appellate brief. Her request for attorney fees is modest and reasonable: $2,439 for fees incurred in trial court and on appeal. McDonald did not respond to the fee request. The trial court is directed to award Moore judgment against McDonald in the amount of $2,439.

SCHOLFIELD and BAKER, JJ., concur.

Reconsideration denied June 7, 1990.

Review denied at 115 Wn.2d 1013 (1990).