

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 SEP -2 AM 8: 40

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of | No. 70953-4-I |
| MARGARET L. PERTHOU-TAYLOR, | DIVISION ONE |
| Deceased. | |
| ALISON PERTHOU, | UNPUBLISHED |
| Appellant/<br>Cross Respondent, | FILED: September 2, 2014 |
| v. | |
| CORNELIA PERTHOU MacCONNEL,<br>individually and as Executor and Notice<br>Agent for the Estate, | |
| Respondent/<br>Cross Appellant. | |

Cox, J. — Alison Perthou appeals the order denying revision of a commissioner's order dismissing her claims against Cornelia Perthou MacConnel, individually and as executor of the estate of Margaret Perthou-Taylor. She also appeals the order denying her motion for reconsideration of this order.

The revision court properly determined that this case does not warrant recognition of the tort of "Intentional Interference with Inheritance or Gift."[1] The court also correctly decided that there is no basis to apply California law regarding punitive damages. And the court properly exercised its discretion both in denying Perthou's motion for reconsideration and in denying MacConnel's request for an award of attorney fees. We affirm.

Margaret Perthou-Taylor died on January 20, 2005. Following her death, Cornelia Perthou MacConnel, Margaret's[2] daughter, filed Margaret's will, but she did not open a probate because there were no assets to probate.[3] She appointed a notice agent and published a nonprobate notice to creditors.

Seven years later, in 2012, Margaret's former daughter-in-law, Alison Perthou, petitioned for relief under the Trust and Estate Dispute Resolution Act (TEDRA) against MacConnel, individually and as executor and notice agent of Margaret's estate. Her claim was based on a December 14, 1982 letter, allegedly written by Margaret to her.[4] The letter purports to confirm a conversation, days earlier, between Perthou and Margaret in which the latter purported to agree to "more than adequately fund [Perthou's] retirement." In return, Perthou was to do certain things.

---

[1] RESTATEMENT (SECOND) OF TORTS § 774B (1979).

[2] Due to the similarity in names, we use Margaret Perthou-Taylor's first name for clarity.

[3] Clerk's Papers at 93.

[4] Id. at 12-13.

Perthou alleged that when she reached the age of 65 in 2010, she contacted MacConnel to claim the retirement account mentioned in Margaret's letter. MacConnel denied knowledge of such an account. Perthou claimed, on information and belief, that MacConnel dissolved the alleged account, and commingled it with other assets. Based on these allegations, she asserted the following causes of action: breach of fiduciary duty, conversion, and tortious interference with a gift. As relief, she sought imposition of a constructive trust and an accounting.

MacConnel, pursuant to CR 12(b)(6), moved to dismiss the claims. This motion was based, in part, on declarations of MacConnel, Norma Oliason, Shawn F. McCord, Leslie A. Monteath, and Deborah J. Phillips. Perthou opposed MacConnel's motion and also moved to strike portions of the MacConnel declaration.

After a hearing, the commissioner ordered the matter dismissed with prejudice. The order incorporated the commissioner's oral ruling.

Perthou moved for revision of the order dismissing her claims. After a hearing, the superior court denied Perthou's motion for revision and affirmed the commissioner's order. The court declined to award fees or costs to either party.

The court later denied Perthou's motion for reconsideration of the order denying revision.

MacConnel also moved for reconsideration on the basis that the court improperly denied her request for attorney fees. The court denied this motion.

Both parties appeal.

3

## MOTION FOR REVISION

Perthou argues that the superior court erred when it denied her motion for revision of the commissioner's order dismissing her claims. We disagree.

*Standard of Review*

Perthou argues that MacConnel's motion was one for summary judgment. MacConnel addresses this motion as one for failure to state a claim. We review the motion as one for summary judgment.

Under CR 12(b)(6), a party may move to dismiss based on the defense that the complaint fails to state a claim upon which relief can be granted. A motion to dismiss under CR 12(b)(6) should be granted only if the plaintiff is not entitled to relief on a claim under any set of facts.[5] Appellate courts treat a motion to dismiss as a motion for summary judgment "when matters outside the pleading are presented to and not excluded by the court."[6]

For a ruling on a motion for revision, the superior court reviews de novo the commissioner's decisions based on the evidence and issues before the commissioner.[7] On appeal, this court reviews the superior court's ruling, not the commissioner's.[8]

---

[5] Cutler v. Phillips Petroleum Co., 124 Wn.2d 749, 755, 881 P.2d 216 (1994).

[6] Sea-Pac Co., Inc. v. United Food & Comm. Workers Local Union 44, 103 Wn.2d 800, 802, 699 P.2d 217 (1985).

[7] In re Marriage of Moody, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999).

[8] In re Marriage of Fairchild, 148 Wn. App. 828, 831, 207 P.3d 449 (2009).

A superior court's ruling, both on a motion to dismiss under CR 12(b)(6) and on a motion for summary judgment, is a question of law that this court reviews de novo.[9]

Here, the superior court considered matters outside the pleadings: the declarations of MacConnel and others. Accordingly, we review the revision order as one granting summary judgment.

Thus, the relevant questions are whether there is any genuine issue of material fact and whether MacConnel is entitled to judgment as a matter of law.[10]

Summary judgment is appropriate only if, from all the evidence, reasonable persons could reach but one conclusion.[11] All facts and inferences are considered in the light most favorable to the nonmoving party.[12] The moving party must show that there is no genuine issue as to any material fact. If this burden is met, the nonmoving party must present evidence demonstrating that material facts are in dispute.[13] Summary judgment is proper if the nonmoving party fails to do so.

---

[9] Cutler, 124 Wn.2d at 755; Davies v. Holy Family Hosp., 144 Wn. App. 483, 491, 183 P.3d 283 (2008).

[10] CR 56(c).

[11] Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

[12] Id.

[13] Id.

"The nonmoving party must set forth specific facts showing a genuine issue and cannot rest on mere allegations."[14] The nonmoving party "may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value . . . ."[15]

In relevant part, the superior court's order denying revision stated the following:

> 1. The Commissioner's Order Approving Petition to Dismiss Claims entered October 10, 2012 is affirmed.
>
> 2. While the appellate courts can and will recognize new causes of action this is not the proper case in which to do so, and the Court declines to recognize a cause of action for tortious interference with a gift.
>
> 3. The imposition of punitive damages generally is tied to other conduct and would require application of a conflicts of law analysis to apply California law here. Based upon the facts presented to the Court, there is no basis to do so.[16]

In her opening brief to this court, Perthou primarily focuses her argument on the superior court's second and third conclusions. Specifically, she contends that the superior court erred when it declined to recognize the tort of tortious interference with a testamentary expectancy or gift. She also challenges the court's conclusion that there was no basis to conduct a conflicts of law analysis

---

[14] Baldwin v. Sisters of Providence in Wash., Inc., 112 Wn.2d 127, 132, 769 P.2d 298 (1989).

[15] Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

[16] Clerk's Papers at 281.

to apply California law regarding punitive damages. Given Perthou's briefing, we direct our attention to these two primary challenges.

*Tortious Interference with a Testamentary Expectancy or Gift*

Perthou primarily argues that the superior court erred when it declined to recognize the tort of tortious interference with a gift. We disagree.

The Restatement of Torts describes the tort of "Intentional Interference with Inheritance or Gift" as follows, "One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift."[17]

California recently recognized this tort in Beckwith v. Dahl.[18] In that case, the court discussed several of the policy considerations that recognition of the tort would bring.[19] For example, it noted that one policy concern "that stands out is the effect that recognition of the tort could have on the probate system."[20] It explained that recognition of the tort "'would risk destabilizing the law of probate and creating uncertainty and inconsistency'" and would also "'risk undermining the legislative intent inherent in creating the Probate Code as the preferable, if

---

[17] RESTATEMENT (SECOND) OF TORTS § 774B.

[18] 205 Cal. App. 4th 1039, 141 Cal. Rptr. 3d 142 (2012).

[19] Id. at 1051-57.

[20] Id. at 1052.

not exclusive, remedy for disputes over testamentary documents.'"[21] Although it concluded that a court should recognize the tort if it is necessary to afford an injured plaintiff a remedy, it cautioned that "[t]he integrity of the probate system and the interest in avoiding tort liability for inherently speculative claims are very important considerations."[22]

Although addressing a different tort, in Hadley v. Cowan, this court considered tort claims brought against will beneficiaries after the parties agreed to settle a will contest.[23] The court looked at the settlement and read it broadly to bar the later assertion of a tort claim by the settling children. This court expressed concerns similar to those stated in Beckwith—the effect on the probate statutes if a tort is recognized outside of this statutory framework.[24] It stated, "It is also obvious that the claims in the present proceedings would have constituted a convenient trial unit in the probate proceeding."[25] Thus, the court did not permit the tort claim to go forward, applying the doctrine of res judicata.

No published decision in Washington has recognized the tort asserted here. Whether we should do so under these facts is the question presented in this case.

---

[21] Id. (alteration in original) (internal quotation marks omitted) (quoting Munn v. Briggs, 185 Cal. App. 4th 578, 590, 110 Cal. Rptr. 3d 783 (2010)).

[22] Id. at 1056.

[23] 60 Wn. App. 433, 437, 804 P.2d 1271 (1991).

[24] See id. at 442-43.

[25] Id. at 443.

In general, most states recognizing the tort adopt it with the following five elements: "(1) an expectation of receiving an inheritance [or gift]; (2) intentional interference with that expectancy by a third party; (3) the interference was independently wrongful or tortious; (4) there was a reasonable certainty that, but for the interference, the plaintiff would have received the inheritance [or gift]; and (5) damages."[26]

As the Beckwith court explained, to establish the second element, the plaintiff must "plead intent, i.e., that the defendant had knowledge of the plaintiff's expectancy of inheritance and took deliberate action to interfere with it."[27] To show the third element, the complaint must allege "that the interference was conducted by independently tortious means, i.e., the underlying conduct must be wrong for some reason other than the fact of the interference."[28] To show the fourth element, the complaint must also allege causation. "'This means that, as in other cases involving recovery for loss of expectancies . . . there must be proof amounting to a reasonable degree of certainty that the bequest or devise would have been in effect at the time of the death of the testator . . . if there had been no such interference.'"[29]

---

[26] Beckwith, 205 Cal. App. 4th at 1050.

[27] Id. at 1057.

[28] Id.

[29] Id. (alterations in original) (quoting RESTATEMENT OF TORTS (SECOND) § 774B).

"Additionally, an [intentional interference with inheritance or gift] defendant must direct the independently tortious conduct at someone other than the plaintiff."[30] "'The beneficiary is not directly defrauded or unduly influenced; the testator is.'"[31] "Even in the relatively few [intentional interference with inheritance or gift] cases . . . where the defendant's wrongful conduct was directed at someone other than the testator, the defendant's interference was never directed only at the plaintiff."[32]

Here, even if we were to ignore the serious policy considerations that both Beckwith and Hadley identify and recognize the tort, Perthou fails to sustain her burden to withstand dismissal. We express no opinion whether the tort should be recognized based on other facts.

MacConnel presented several declarations to support her motion to dismiss. These declarations show that there is no genuine issue of material fact for several elements. For example, MacConnel presented evidence to show that she did not know about Margaret's alleged gift to Perthou.

In one declaration, MacConnel testified that in 2011 she was first presented with a copy of the letter allegedly written by her mother. She stated that no one in her family had "ever heard any mention of this supposed letter or arrangement" and that her mother, Margaret, never spoke of it. She further

---

[30] Id.

[31] Id. at 1058 (emphasis omitted) (quoting Whalen v. Prosser, 719 So.2d 2, 6 (Fla. Dist. Ct. App. 1998)).

[32] Id.

testified, "[M]y mother was an inveterate record keeper, and kept copies of all her correspondences, I have combed through all her papers searching for any copies or indications of any records that might shed light on [Perthou's] claim or allegations. I have found no copies of such a letter."[33] She also stated that she has Margaret's tax returns and bank ledgers from 1980 until her death and that she reviewed these documents and found nothing to indicate an account set aside for Perthou. Finally, she testified that during the time she was co-trustee and after Margaret's death, she did not learn of any other funds or accounts held outside Margaret's trust. She stated that if Margaret had set up a trust or account for Perthou, she "would certainly have honored that."

Additionally, declarations from accountants and from a financial advisor that handled Margaret's accounting, personal tax, and trust account matters show that none of these individuals recall Margaret mentioning Perthou or setting up an account for Perthou's benefit.

For example, Leslie Monteath, one of Margaret's financial advisors, declared that Margaret "never made any mention to [her] of Alison Perthou." She also testified that she never took instructions from MacConnel concerning the handling of Margaret's accounts.

In another declaration, Shawn McCord, one of Margaret's accountants, testified that he "was unaware of an Alison Perthou or her relation to [Margaret]" and had "no recollection of every [sic] having had any discussion with [Margaret] concerning an Alison Perthou." He stated, "If there had been a 'retirement

---

[33] Clerk's Papers at 366.

11

Account' a financial institution would have issued a tax form. At no time during my work for [Margaret] do I recall receiving a 1099 for an account identified for the benefit of Alison Perthou." Additionally, he stated that he discussed with Margaret gifts she made to charities and individuals, and he prepared gift tax returns when needed. He testified that Margaret did not identify any gifts to Perthou that resulted in the preparation of any gift tax returns.

This evidence negates the second element of the tort claim. There simply is no showing that MacConnel had the requisite knowledge of the alleged gift or that she intentionally interfered with it.

Further, without proof of the second element, there is also no showing of the fourth element: causation. Perthou fails to show that proof amounting to a reasonable degree that the bequest or devise would have been in effect at the time of the death of the testator if there had been no such interference.

Likewise, the third element of this tort claim is also lacking: that "the interference was conducted by independently tortious means." And Perthou does not establish that MacConnel directed any tortious conduct at someone other than Perthou, which the tort requires.[34]

Having negated the factual basis to support these elements, the burden shifted to Perthou to show the existence of facts to show these elements. She simply failed to do so.

Perthou argues that each of the elements of the tort are alleged in her TEDRA petition. But allegations alone are insufficient in the context of this

---

[34] Beckwith, 205 Cal. App. 4th at 1058.

motion.[35] Evidence is required. And Perthou's evidence does not create any genuine issue of material fact for trial.

Perthou relies on the 1982 letter and on her declaration where she asserts that she has "no doubt that Margaret fulfilled her promise" and that the account established for her was dissolved by MacConnel on or before Margaret's death. Giving all reasonable inferences to her, as we must, these assertions do not create any genuine issue of material fact. That is because they are merely assertions, not facts.[36] In particular, Perthou fails to present evidence to show the existence of facts for the elements of the tort claim that we just discussed.

Perthou alleges that MacConnel "whether by fraud, duress or other tortious means, intentionally prevented [Perthou] from receiving the gift from decedent." But she offers no evidence to support this allegation or to support the allegation that MacConnel knew of Perthou's expectancy. Thus, she fails to show any genuine issue of material fact.

Perthou also alleges that "[u]pon information and belief, Margaret L. Perthou-Taylor fulfilled her promise and immediately began funding an investment account for [Perthou's] retirement, and continued to make annual contributions to the maximum extent allowed under IRS gifting rules from 1982 until her death in 2005. At no time did Margaret L. Perthou-Taylor ever revoke the gift to [her]."[37] But "information and belief" is not "proof amounting to a

---

[35] See Baldwin, 112 Wn.2d at 132.

[36] See id.

[37] Clerk's Papers at 6.

13

reasonable degree of certainty," which is required to show causation.[38] Perthou may not rely only on speculation.[39] Again, Perthou fails in her burden.

In sum, Perthou fails to show any genuine issue of material fact for trial. Thus, any factual disputes are immaterial for summary judgment purposes.

Perthou contends that the superior court erred when it declined to strike portions of MacConnel's declaration. Specifically, she argues that the superior court should have allowed her the opportunity to cross-examine MacConnel because the facts of her affidavit were particularly within her own knowledge.[40] She also claims several paragraphs of the MacConnel declaration should be disregarded because the failure to attach referenced documents violated CR 56(e), and she claims that MacConnel's testimony regarding the contents of documents is hearsay as are the documents themselves. Because these arguments are not well taken, we reject them.

The cases on which Perthou relies to assert that cross-examination should have been allowed here do not establish a uniform rule for further discovery. If that were the case, the court could never grant summary judgment on the basis of declarations. Clearly, that is not the law.

The failure to attach documents to the declaration has little or no impact on the evidence in the declaration itself. That evidence essentially denied any knowledge of the claimed fund and further detailed what steps MacConnel took

---

[38] See Beckwith, 205 Cal. App. 4th at 1057.

[39] See Seven Gables Corp., 106 Wn.2d at 13.

[40] Brief of Appellant at 28.

to investigate Margaret's records to determine whether there was any evidence of such a fund.

We view the hearsay challenge in a similar light. It has little or nothing to do with the substance of the testimony in the declaration.

For these reasons, we reject the argument that declining to strike this declaration was erroneous. Even if that were the case, the other unchallenged declarations provide evidence that the alleged fund never existed.

Perthou argues that the need to recognize this tort is "obvious and acute" and that recognition "will foster important public policy."[41] Neither assertion is persuasive in this case for the reasons we already discussed.

The only case on which Perthou heavily relies is Beckwith.[42] But the facts of that case are entirely distinguishable from this case. Notably, there, Brent Beckwith contested the final distribution of the estate of his deceased long-term partner, who died intestate, from the outset.[43] The probate judge found that Beckwith had no standing because he was not a creditor of the estate and had no intestate rights.[44]

Here, Perthou waited seven years after Margaret's death to make any claim based on this alleged gift, although she knew of the deceased's passing.

_____

[41] Id. at 15.

[42] Id. at 15-17 (citing Beckwith v. Dahl, 205 Cal. App. 4th 1039, 141 Cal. Rptr. 3d 142 (2012)).

[43] Beckwith, 205 Cal. App. 4th at 1048.

[44] Id.

Unlike Beckwith, under these facts, Perthou does not show that recognition of the tort is necessary to afford her a remedy.

Perthou also contends that the superior court abused its discretion when it did not remand the case to the commissioner after Perthou submitted a declaration showing allegedly improper actions of MacConnel's counsel and a supplemental declaration detailing her conversation with an attorney that represented Margaret. But Perthou admits that the superior court was not authorized to consider new evidence on a motion for revision. Further, she provides no relevant authority on appeal to support her assertion that "the appropriate course of action was to remand the case to the commissioner."

Perthou argues that she should be granted leave to amend her petition, and she should be allowed to pursue her claim in the trial court. But as Perthou herself argues, this was a motion for summary judgment. She cites no authority that she should be allowed to pursue her claim or amend her complaint following a summary judgment dismissal. Perthou failed to meet her burden to withstand dismissal under the elements she articulated. Thus, we deny the request for leave to amend.

MacConnel argues that laches precludes Perthou's assertion of her claim. Because we decline to recognize the tort of tortious interference with a testamentary expectancy or gift in this case, we need not address the claim of laches.

At oral argument, counsel conceded that there is no claim against the estate and that the claim is against MacConnel, in her individual capacity and as

16

executor of the closed estate. Thus, we need not address whether the creditor's claim statute bars this claim.

### Punitive Damages

Perthou next argues that the superior court erred when it dismissed her claim for punitive damages under California law. We disagree.

Perthou's argument about punitive damages appears to be based solely on her argument that the court erred when it declined to recognize tortious interference with a gift. She states, "To the extent that the trial court's conclusion rests upon its refusal to recognize a cause of action for tortious interference with a gift, the foregoing discussion and authorities supporting such a cause of action renders untenable the trial court's refusal to recognize [Perthou's] claim for punitive damages under California law."[45]

Because the superior court did not err when it declined to recognize the tort, it did not err when it reached this conclusion.

### Other Claims

Perthou argues in her reply brief that the remaining claims—breach of fiduciary duty, conversion, constructive trust, and accounting—have not yet been adjudicated. She is mistaken.

MacConnel's Petition to Dismiss Claims stated, "There is no basis for [Perthou's] claims, under any of the theories advanced, and **all should be dismissed with prejudice** . . . ."[46] The commissioner's order approved the

---

[45] Brief of Appellant at 25.

[46] Clerk's Papers at 92 (emphasis added).

petition to dismiss claims.[47] And the order denying revision stated, "The Commissioner's Order Approving Petition to Dismiss Claims entered October 10, 2012 is affirmed."[48] All claims were dismissed, and Perthou fails to make any specific argument why dismissal of these other claims was improper. Accordingly, we do not address these claims any further.

## PERTHOU'S MOTION FOR RECONSIDERATION

Perthou asserts that the superior court abused its discretion when it denied her motion for reconsideration. We disagree.

This court reviews the denial of a motion for reconsideration for abuse of discretion.[49] A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons.[50]

Perthou moved for reconsideration "[p]ursuant to CR 59," based on the argument that her cause of action for conversion was not addressed in the motion to dismiss or by the commissioner.

First, Perthou fails to identify a basis for reconsideration that would support her motion. She does not specify any ground in CR 59(a)(1)-(9).

Moreover, as previously discussed, Perthou is incorrect that her conversion claim was not addressed in the petition to dismiss. The order

---

[47] Id. at 125.

[48] Id. at 281.

[49] Lilly v. Lynch, 88 Wn. App. 306, 321, 945 P.2d 727 (1997).

[50] In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

approving the petition to dismiss claims encompassed *all* claims in the TEDRA petition, including Perthou's claim of conversion.

Additionally, Perthou alleged that she had identified potential evidence that would allow her to prove her claim, which included "reliable information from the former managing partner of the law firm which administered the estate of Margaret Pe[r]thou-Taylor that defendant Cornelia "Nina" MacConnel had in fact interfered with the retirement account created by Margaret for [Perthou's] benefit."[51] But she did not argue or establish that this is newly discovered evidence, a requirement for a successful CR 59 motion.

Given these reasons, the superior court did not abuse its discretion when it denied Perthou's motion.

## ATTORNEY FEES

MacConnel cross-appeals. She argues that the superior court abused its discretion when it denied her request for attorney fees. Additionally, she requests that this court award her fees on appeal. We deny both requests.

*Denial of Attorney Fees at Superior Court*

MacConnel argues that the superior court abused its discretion when it denied her request for attorney fees. We disagree.

RCW 11.96A.150(1) states:

Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or

---

[51] Clerk's Papers at 287.

(c) from any nonprobate asset that is the subject of the proceedings.

In exercising its discretion, the court may consider any factors it deems relevant and appropriate, which may include "whether a case presents novel or unique issues."[52]

This court reviews a trial court's fee decision under this statute for abuse of discretion, and it will uphold the trial court's decision unless it is manifestly unreasonable or based on untenable grounds or reasons.[53] The superior court's decision is neither unreasonable nor based on untenable grounds or reasons.

Here, the superior court's order denying fees stated the following:

> 4. The Court declines to award attorneys fees or costs, pursuant to RCW 11.96A.150. The Court finds that under the facts of this case, and considering all equities, and the petitioner presenting a novel issue of law in the State of Washington, which has been adopted in other jurisdictions, neither side should be awarded its fees or costs.[54]

The superior court's consideration of the fact that this case presented a novel or unique issue was a proper basis to deny the fee request and a proper exercise of discretion.

MacConnel argues that "[e]quity required the trial court to award [her] attorney fees under RCW 11.96A.150." To support her argument, she cites

---

[52] In re Guardianship of Lamb, 173 Wn.2d 173, 198, 265 P.3d 876 (2011).

[53] Bale v. Allison, 173 Wn. App. 435, 461, 294 P.3d 789 (2013).

[54] Clerk's Papers at 281.

cases where courts awarded fees because the suit did not benefit the estate.[55]

While that may be an appropriate consideration in some cases, that factor does

not override the consideration of other factors, such as whether the case

presented novel and unique issues. The superior court's reasoning evidenced

an appropriate exercise of discretion. There is no reason to disturb its decision.

MacConnel also argues that the superior court's denial of fees is

inconsistent with Margaret's trust, which provided that MacConnel as trustee

should not be personally responsible for the expenses of administering the

estate. But that argument appears to be based on permitting the executrix to

recover such fees from the trust. Why that serves as a basis for fees against

Perthou is unclear. Further, the tortious interference claim was also brought

against MacConnel in her individual capacity. Why the trust would be

responsible for such fees is also unclear.

### Fees on Appeal

MacConnel argues that this court should award her attorney fees on

appeal pursuant to RCW 11.96A.150 and RAP 18.1. For the reasons we

discussed for the denial of fees below, we also deny fees on appeal.

## MOTION TO STRIKE AND FOR SANCTIONS

Finally, Perthou moves, pursuant to RAP 10.7, to strike all references in

MacConnel's briefs to an unpublished decision and asks this court to impose

---

[55] Brief of Respondent/Cross Appellant at 28-29 (citing In re Estate of Kerr, 134 Wn.2d 328, 344, 949 P.2d 810 (1998); In re Korry Testamentary Marital Deduction Trust for Wife, 56 Wn. App. 749, 756, 785 P.2d 484 (1990); In re Estate of Jones, 152 Wn.2d 1, 20, 93 P.3d 147 (2004)).

sanctions. We disregard the citation to the unpublished decision, but deny the request for sanctions.

GR 14.1(a) states, "A party may not cite as an authority an unpublished opinion of the Court of Appeals. Unpublished opinions of the Court of Appeals are those opinions not published in the Washington Appellate Reports."

RAP 10.7 provides, "The appellate court will ordinarily impose sanctions on a party or counsel for a party who files a brief that fails to comply with these rules."

Here, MacConnel cited and relied on In re Estate of Hendrix,[56] an unpublished opinion of this court, to support arguments in her response brief and her surreply brief. This citation violated GR 14.1(a). But there is no showing that this was prejudicial either to MacConnel or this court.

For these reasons, we disregard the citation to the unpublished decision of this court, but we decline to award sanctions for this violation of the RAPs.

We affirm the orders denying the motion for revision, the motion for reconsideration, and MacConnel's request for attorney fees. We deny MacConnel's request for attorney fees on appeal.

Cox, J.

WE CONCUR:

Becker, J.

---

[56] 134 Wn. App. 1007, 2006 WL 2048240.

22