OPINION OF THE COURT
Bernard M. Bloom, S.
This is a proceeding to construe the will of Vincenza Passanisi, who died on October 1, 1982 at the age of 84 leaving a will dated March 17, 1977 which has been probated.
Article third of the will provides that the premises at 1958 76th Street, Brooklyn, New York, described as a two-family home presently occupied by her, is given, devised and bequeathed to her son Francisco Passanisi “on condition, however, that * * * [he] shall pay to my son michael passanisi, the sum of Ten Thousand and 00/100 [$10,000.00] Dollars, in any manner which is agreeable between my two sons.” It is further provided that in the event Francisco “refuses or can not pay” the $10,000 to his brother Michael, then and in that event the property is given, devised and bequeathed to both sons “share and *327 share alike.” The article concludes as follows: “In the event that the aforesaid premises 1958 76th Street, Brooklyn, New York shall become the property of my two sons francisco passanisi and michael passanisi as herein provided, and if in the further event either of my beloved sons shall predecease me and leave issue surviving, then and in that event, I give, devise and bequeath that portion of my predeceased son’s interest in and to said premises, to the issue of said predeceased child, in equal shares, share and share alike, absolutely and forever.”
There are no other preresiduary dispositions.
Article fourth leaves the residue of the estate to the sons equally. Article fifth provides that if either son should predecease leaving issue surviving, that portion of the estate to which the predeceased child would have been entitled had he survived her shall pass to his issue in equal shares, share and share alike, absolutely and forever.
Francisco Passanisi, who had been nominated as executor, predeceased his mother on December 5, 1978 leaving three issue, namely a son, Phillip Passanisi, and two daughters, Assunta Kurys and Vincenza Fronapfel. Michael Passanisi survived the testatrix and is, in fact, acting as personal representative pursuant to his designation as alternate executor.
After Michael Passanisi made known his unwillingness to accept a tender of $10,000 from Francisco’s children in discharge of his rights in the real property, one of them, Vincenza Fronapfel, brought on this construction proceeding on behalf of herself and her brother and sister asserting that their collective rights under the will are identical to those which their father would have enjoyed had he survived their grandmother.
In his responsive papers, relying entirely on the article third provision that he is to have a one-half interest in the realty in the event that Francisco “can not” pay him the $10,000 called for, Michael Passanisi contends that the right of purchase of his beneficial interest for $10,000 was purely personal to his late brother and, consequently, that Francisco’s issue cannot claim it in his stead. He does not deny that the general substitutional gift provision at article fifth in favor of issue has a bearing on the question but *328 argues that it is operative only to pass to Francisco’s issue the one-half interest in the premises which had been intended for their father in the event of his inability to pay the $10,000 sum.
A testamentary option to purchase realty may be termed “peculiarly personal” in the sense of being neither alienable during life nor inheritable or descendible in a particular case (Matter of Hauser, 50 NYS2d 709; see, also, Testamentary Option to Purchase Estate Property as Surviving Optionee’s Death, Ann., 18 ALR4th 578; see, also, Buffalo Seminary v McCarthy, 86 AD2d 435, affd 58 NY2d 867 [holding the rule against perpetuities applicable to purchase options]) as may other testamentary gifts of beneficial rights in land (see Metcalf v Crystal Brook Park Assn., 63 App Div 445 [privilege granted to testator’s daughter to cart hay over neighboring property devised to her sister held to be a personal privilege or right in gross which terminated at the daughter’s death and did not pass to those deriving title through her]).
However, the characterization of such interests as “personal” should not necessarily be equated with preclusion of a substitutional gift of the beneficial interest to another in the event of the predecease of the intended beneficiary. In Matter of Quigley (37 Misc 2d 320), which appears to be the sole reported decision in this State addressing the question of what becomes of these interests in land when the person intended to receive the benefit has predeceased the testator, the Surrogate determined that the privilege lapses or goes to an alternate taker depending simply upon the particular testator’s intent, whether it be express or imputed by statute.
Matter of Quigley (supra) is instructive not only for the enunciation of the general principle that a case-by-case determination is in order rather than any hard and fast rule, but also, in view of the rather striking similarity of its facts to those presented in the case at bar, for the concrete application of the principle.
Mrs. Quigley had devised all of her property, both real and personal, in equal shares to her son Harry and her daughter Margaret. She had gone on to provide in a subsequent paragraph of her will that Harry should have the *329 right, if he so desired, to purchase a certain building known as the “Quigley Block” and to be given a deed thereto upon giving a bond and mortgage to Margaret upon terms therein specified. The terms of the purchase option were highly favorable to Harry and no time limit for the exercise of the option was prescribed. It was evident that the testatrix intended to prefer Harry over Margaret in respect of the commercial building in the hope that he would continue the family business at the location to which the option attached. Harry predeceased his mother and there was no express substitutionary gift to be found anywhere in the will. As there was no indication of an intent contrary to the antilapse statute (then Decedent Estate Law, § 29; now EPTL 3-3.3), the argument that the statute was broad enough to permit Harry’s two children to exercise the option to purchase the realty prevailed over the contention that the option was purely personal to Harry, knowledge of the effect of the antilapse statute being imputed to the testatrix (see, also, Matter of Depeirris, 110 App Div 421; Matter of Jerge, 180 Misc 268).
Of course in the instant case the antilapse statute is not applicable, testatrix having supplied her own gift over provision as to all lapsed legacies. (Matter of Neydorff, 193 App Div 531; Matter of Cameron, 80 Misc 2d 174; Matter of Howes, 35 Misc 2d 109.) But as her substitutional provision accomplishes the same result as would obtain independently by statute since she named the issue surviving the respective primary beneficiaries as the alternate recipients, Quigley would appear to be dispositive unless the provision that Michael Passanisi is to have a one-half share of the realty in the event that Francisco “refuses or can not pay” him $10,000 is read so as to be made the fulcrum for a distinction.
In the opinion of this court, the provision in question, when considered in light of the will in its entirety (see Matter of Fabbri, 2 NY2d 236), cannot be fairly read to mean that Francisco’s death destroyed the option as to those named to succeed to his interest. The testatrix made explicit references to the contingency of the predecease of one of her sons in article third, in connection with the premises that are the subject of this proceeding (though *330 such reference is admittedly inscrutable), in article fifth, concerning the estate in general and, finally, in article seventh, pertaining to the nomination of fiduciaries. Given these repeated and unmistakable references to the contingency of the predecease of one of the intended beneficiaries, it seems highly unlikely that the phrase “refuses or can not pay” is intended to include the eventuality that Francisco should be prevented from making the $10,000 payment by reason of his death prior to that of his mother. Rather, the quoted words strike the reader in the context in which they appear as contemplating only a living person’s overt responses to the option afforded which would serve to terminate it, such as a voluntary renunciation of the privilege or the giving of notice of financial inability to make the required $10,000 payment.
Accordingly, Michael Passanisi is directed to furnish an executor’s deed to the real property situate at 1958 76th Street, Brooklyn, to Vincenza Fronapfel, Phillip Passanisi and Assunta Kurys as tenants in common upon receipt of $10,000 furnished by said persons.
All other matters raised by the parties are premature at this time but may be subjected to proof in a proceeding to settle the executor’s final account.