[No. 57348-4.    En Banc.    October 31, 1991.]

*In the Matter of the Estate of*
RAYMOND J. NIEHENKE.

CATHERINE A. MIDTHUN, ET AL, *Respondents*, v. ELMER
GUSKE, ET AL, *Petitioners*.

632

*Irwin, Myklebust, Savage & Brown, P.S.,* by *Kelly N. Brown,* for petitioners Guske.

*Nuxoll, Libey, Ensley & Esser,* by *Wesley A. Nuxoll,* for petitioner estate.

*Lukins & Annis, P.S.,* by *Martin G. Weber,* for respondents.

ANDERSEN, J. —

FACTS OF CASE

This case involves construction of a will and application of Washington's anti-lapse statute to a testamentary option to purchase estate property.

Raymond J. Niehenke (hereafter testator) died on February 12, 1987 leaving a last will and testament which provided in pertinent part:

Option to Purchase Property

I give, devise and bequeath unto the following relatives the option to purchase the farmlands as hereinafter set forth, upon the terms and conditions hereinafter provided:

1. My nephew, FRANCIS NIEHENKE, shall have the option to purchase on contract as hereafter provided, the

farmland and buildings commonly described as the "Home Place" . . ..

The purchase price is the sum of Fifty-Two Thousand Dollars ($52,000.00) less the principal and interest owing at the time of my death for any encumbrances on said real estate, together with interest on the unpaid balance at the rate of four per cent (4%) per annum from the date of my death. In the event my nephew, FRANCIS NIEHENKE, does not exercise said option as hereinafter provided, my nephews, ALVIN GUSKE and ELMER GUSKE, shall have the option to jointly purchase said farmland upon the same terms and conditions.

The will then gave an option to purchase a second farm to Alvin Guske and an option to purchase a third farm to another nephew with alternate optionees named in those clauses. There is no dispute as to the options for these other two farms. The testator declared that it was his desire that his farmland stay in the family as long as possible.

In the event that the named optionees did not exercise their right to purchase, the residuary beneficiaries (11 nieces and nephews or their representatives) were given the right to purchase on the same conditions except that the farms were to be sold to the highest bidder. The will provided that the first optionees must exercise their options within 3 months after the testator's death and alternate optionees within 4 months. The receipts from the sales of the farms were given to certain named charities and the 11 nieces and nephews named in the residuary clause.

The will named Francis Niehenke and Elmer Guske, or the survivor thereof, as executors of the will and provided:

Either of my executors shall in no way be prohibited or prevented from exercising any of the options to purchase as provided in Article IV. by reason of his acting as executor for my estate.

Francis Niehenke (first optionee of the "Home Place") died 7 years before the testator died. The testator made no changes to his will after Francis' death. After the testator died (on February 12, 1987), Francis' six children (respondents herein) by letter dated March 30, 1987, gave notice

that they were exercising the option to buy the "Home Place". Thereupon, by letter dated April 29, 1987, Alvin and Elmer Guske (alternate optionees and appellants herein) also gave notice of intent to exercise that option. This action followed.

The Whitman County Superior Court concluded that since death prevented Francis from exercising his option, his children succeeded to it by operation of RCW 11.12.110, commonly referred to as the anti-lapse statute. That court also awarded to Francis' children the landlord's share of all receipts from the sale of crops grown on the "Home Place" and harvested in 1987 and thereafter. The Superior Court by oral ruling determined that no attorneys' fees were to be awarded.

The estate and the alternate optionees (Alvin and Elmer Guske) separately appealed to the Court of Appeals where the appeals were consolidated. The estate challenged the crop proceeds distribution for the year of the testator's death and Alvin and Elmer Guske challenged the decision that Francis' children were entitled to exercise the option to purchase the "Home Place". The Court of Appeals affirmed and held that (1) the anti-lapse statute applied to transfer the option to buy the farm from Francis to Francis' children; (2) Francis' children were entitled to the crop proceeds; and (3) attorneys' fees should be borne by the estate.[1]

Three issues are presented by this case.

## ISSUES

ISSUE ONE. Upon the death of the testator, did the right to exercise the option to purchase the "Home Place" pass to the lineal descendants of Francis Niehenke, the first optionee, or to the alternate optionees, Alvin and Elmer Guske?

ISSUE TWO. Is the estate or the holder of the option to purchase the "Home Place" entitled to the proceeds from

---

[1] *In re Estate of Niehenke*, 58 Wn. App. 149, 157, 791 P.2d 562, *review granted*, 115 Wn.2d 1015 (1990).

the sale of crops growing at the time of the testator's death but not harvested until after the options were attempted to be exercised?

ISSUE THREE. Did the Court of Appeals err in awarding attorneys' fees against the estate?

DECISION

ISSUE ONE.

CONCLUSION. Upon the death of the testator, the right to exercise the option to purchase the "Home Place" passed by operation of Washington's anti-lapse statute (RCW 11.12-.110) to the lineal descendants of the first optionee, Francis Niehenke.

The resolution of this issue requires that two questions be answered: (1) should testamentary options always be construed as "personal" to the optionee so that the anti-lapse statute should never be applied to save such gifts for the optionee's lineal descendants; and (2) if such gifts are susceptible to the operation of the anti-lapse statute in some instances, did this testator's naming of alternate optionees in the event Francis did not exercise the option show his clear intent that the anti-lapse statute not be applied?

There is a significant split of authority in other jurisdictions on whether or not a testamentary gift in the form of an option to purchase estate property survives the optionee's death.[2] One line of cases holds that testamentary options to purchase property are significant property rights that survive the death of the optionee.[3] However, other cases hold that an option to purchase estate property

---

[2]Annot., *Testamentary Option To Purchase Estate Property as Surviving Optionee's Death*, 18 A.L.R.4th 578 (1982).

[3]*See, e.g., Tuecke v. Tuecke*, 257 Iowa 199, 131 N.W.2d 794 (1964); *In re Estate of Quigley*, 37 Misc. 2d 320, 325, 236 N.Y.S.2d 180, 186 (1963); *Mason v. Mason*, 194 Iowa 504, 508, 188 N.W. 685, 687 (1922).

is personal to the optionee and cannot be exercised by successors in interest to the devisee or legatee.[4] A number of cases which consider the applicability of anti-lapse statutes to testamentary options indicate that options survive the optionee's death (and pass to that named person's descendants) by virtue of such statutes.[5]

Rather than asking which line of cases constitutes the majority, we deem it more appropriate to consider the underlying purpose of the anti-lapse statute and a testator's probable intent when giving an option to purchase. Options to purchase estate property are frequently used in wills to equalize the shares of a testator's property given to different relatives.[6] Options can be used to keep a piece of property in the family while still giving gifts of equal value to a number of children. The option can be used to give a family home, farm or business to one child at some percentage of its market value with the purchase price being used to fund a gift to another of the testator's children.[7]

■ There is good reason in such cases to hold that such a gift can be transferred to a beneficiary's lineal descendants in the case where the named beneficiary predeceases the testator. The policy of the law of Washington is against the lapsing of gifts to relatives of a deceased.[8] If we held

---

[4]*See, e.g., In re Estate of Maguire*, 204 Kan. 686, 466 P.2d 358 (and cases cited therein), *modified on other grounds*, 206 Kan. 1, 476 P.2d 618 (1970).

[5]*Mason*, 194 Iowa at 508, 188 N.W. at 687; *Tuecke*, 257 Iowa at 205, 131 N.W.2d at 797; *Quigley*, 37 Misc. 2d at 325, 236 N.Y.S.2d at 186; *see Estate of Ludwick*, 269 Pa. 365, 370, 112 A. 543, 544 (1921).

[6]6 W. Bowe & D. Parker, *Page on Wills* § 51.15, at 135 (1962).

[7]*See, e.g., In re Estate of Passanisi*, 124 Misc. 2d 326, 476 N.Y.S.2d 456 (1984); *Tuecke v. Tuecke, supra; In re Estate of Quigley, supra.*

[8]*In re Estate of Button*, 79 Wn.2d 849, 854, 490 P.2d 731, 47 A.L.R.3d 352 (1971).

that an option is always personal to the beneficiary, an entire bloodline of the testator would often be disinherited. For example, if a testator gave an option to buy the family home (worth $100,000) to child No. 1 at a price of $50,000 and gave the $50,000 purchase price to child No. 2 and child No. 1 predeceased the testator, the anti-lapse statute would operate to give child No. 1's children the option to buy the home. If the statute can never operate to transfer an option, then in the example just posed, the family of child No. 1 could be totally disinherited. It is just such a result that the anti-lapse statute was intended to prevent.[9]

Although at common law a testamentary gift lapses if a beneficiary predeceases the testator, Washington's anti-lapse statute (RCW 11.12.110) changes this result in many cases. The statute operates so that when a testator fails to provide for the possibility that a consanguineous beneficiary might predecease him or her then the "lineal descendants" of that beneficiary take the gift.[10]

The statute is based on the assumption that this is what a testator would have intended had the testator contemplated this contingency. It would naturally be expected that a testator would intend that his or her property should go to the lineal descendants of the testator's named relative-beneficiary because such descendants would be the relatives for whose welfare testator might be supposed to have a concern.[11]

■ The anti-lapse statute, RCW 11.12.110, provides in relevant part:

When any estate shall be devised or bequeathed to any child, grandchild, or other relative of the testator, and such devisee or legatee shall die before the testator, having lineal descendants who survive the testator, such descendants shall

---

[9]*In re Estate of Allmond*, 10 Wn. App. 869, 871, 520 P.2d 1388, *review denied*, 84 Wn.2d 1004 (1974); 6 *Page on Wills* § 50.10, at 77.

[10]*In re Estate of Button, supra; Allmond*, 10 Wn. App. at 871.

[11]*Allmond*, 10 Wn. App. at 871 (citing *In re Estate of Renton*, 10 Wash. 533, 39 P. 145 (1895)).

take the estate, real and personal, as such devisee or legatee would have done in the case he had survived the testator; . . .

This language raises the question whether an option to purchase is an "estate" as that term is used in the anti-lapse statute. This court has given a very broad interpretation to the anti-lapse statute, holding that even an inter vivos trust will be subject to its operation.[12] Equally broadly, the court in *In re Estate of Quigley*, 37 Misc. 2d 320, 325, 236 N.Y.S.2d 180, 186 (1963), held that if an option has any value at all it becomes an "estate" within the purview of the New York anti-lapse statute.[13] In another context we have held that an option to purchase real estate is a valuable and substantial property right.[14]

Looking to the substance of the transaction and the purposes of the anti-lapse statute, a gift by will of an option to purchase estate property, which is a valuable right, should also be susceptible to the operation of the anti-lapse statute unless the testator clearly indicates a contrary intent. We note that an option to purchase estate property is a useful estate planning tool and hold it is to be considered like any other testamentary gift for purposes of the operation of Washington's anti-lapse statute.

Having decided that testamentary options can be subject to the operation of the anti-lapse statute, the issue then becomes whether this testator has, by naming alternate optionees, expressed his clear intention that the anti-lapse statute not apply.

■■ The primary duty of a court when interpreting a will is to determine the intent of the testator.[15] Statutes

---

[12]*In re Estate of Button, supra.*

[13]*See also Tuecke*, 257 Iowa at 203, 131 N.W.2d at 795, holding an option to buy a farm was not a mere right, but an asset of very substantial economic value; *Mason*, 194 Iowa at 508, 188 N.W. at 687, holding an option is a valuable property right inheritable under the anti-lapse law of the jurisdiction.

[14]*Spokane Sch. Dist. 81 v. Parzybok*, 96 Wn.2d 95, 633 P.2d 1324 (1981).

[15]*In re Estate of Bergau*, 103 Wn.2d 431, 435, 693 P.2d 703 (1985); *In re Estate of Smith*, 40 Wn. App. 790, 793, 700 P.2d 1181 (1985).

that prevent lapse are not mandatory and do not apply if the testator clearly intended a different result.[16] Although the Washington anti-lapse statute generally reflects the policy of this state against the lapsing of testamentary gifts to relatives of the testator, this does not mean that a testator cannot provide for a different disposition, and if he or she does so, the statute has no application.[17]

In order for a court to conclude that the anti-lapse statute should not apply, an intent on the part of the testator to preclude the operation of the statute must be *clearly* shown.[18] A recent wills text has noted that "strong evidence" should be required before assuming a testator intended to disinherit a branch of the testator's family.[19]

■ There is considerable doubt in the present case whether the testator intended to disinherit Francis' children in the event Francis predeceased him; we consider that lack of clarity to weigh against disinheritance. Those opposing operation of the anti-lapse statute have the burden of showing it should not apply as there is a presumption in favor of the statute's normal operation.[20] Generally, anti-lapse statutes are to be construed liberally in order to carry out the testator's presumed intention.[21]

■ Additionally, a testator is presumed to be aware of the anti-lapse statute at the time the will is executed.[22]

---

[16]6 *Page on Wills* § 50.11, at 82; W. McGovern, S. Kurtz, & J. Rein, *Wills, Trusts and Estates* § 10.4, at 423 (1988); *Button,* 79 Wn.2d at 854; *Allmond,* 10 Wn. App. at 871.

[17]*Button,* 79 Wn.2d at 854.

[18]*Allmond,* 10 Wn. App. at 871; 6 *Page on Wills* § 50.11, at 84 (1962).

[19]*Wills, Trusts and Estates* § 10.4, at 424.

[20]*Allmond,* 10 Wn. App. at 871.

[21]6 *Page on Wills* § 50.10, at 77; *Estate of Steidl,* 89 Cal. App. 2d 488, 494, 201 P.2d 58, 63 (1948).

[22]6 *Page on Wills* § 50.11, at 82-83; *McDonald v. Moore,* 57 Wn. App. 778, 780, 790 P.2d 213, *review denied,* 115 Wn.2d 1013 (1990); *In re Estate of Mell,* 105

Therefore, this testator is presumed to have known that when Francis predeceased him, Francis' children would receive their father's gift. Although we do not consider it determinative, we note that in this case the alternate optionees did receive other gifts under the will, whereas Francis' family will be totally disinherited if the anti-lapse statute is not given its ordinary application.

We further note that if Francis had survived and had exercised his option, the farm in all probability would have passed to Francis' children and the testator must have been aware of this when he made his will. Thus, application of the anti-lapse statute here will, in all likelihood, give Francis' children the same rights directly which they would in the course of time have received indirectly had Francis lived.[23]

■■ Under Washington law, a clear manifestation of an intention to devise or bequeath can only be "cut down" or conditioned by an equally clear manifestation of an intent to condition.[24] We do not here find a clear manifestation of the testator's intention to condition the gift on Francis' survival. Numerous cases have held that if a testator wanted an option to be conditioned on survival of the beneficiary, then the testator would have so stated and the courts should not add conditions to testamentary gifts.[25]

In a case very similar to this one, a New York court concluded that an option to purchase estate property

---

Wn.2d 518, 524, 716 P.2d 836 (1986); *Steidl*, 89 Cal. App. 2d at 495, 201 P.2d at 63; *Tuecke*, 257 Iowa at 205, 131 N.W.2d at 797.

[23]*See, e.g., Tuecke v. Tuecke*, 257 Iowa 199, 205, 131 N.W.2d 794, 797 (1964).

[24]*Smith*, 40 Wn. App. at 794 (citing 4 W. Bowe & D. Parker, *Page on Wills* § 30.10, at 83 (1961)).

[25]*See, e.g., Allmond*, 10 Wn. App. at 872 (if the testatrix wished to benefit the named beneficiary, but not his children, it is more rational she would have clearly expressed that intention); *Mason v. Mason*, 194 Iowa 504, 509, 188 N.W. 685, 686-87 (1922) (had it been testatrix's purpose to restrict the option to her son in person to the exclusion of his family, it would have been the easy and natural thing for her to express herself in unequivocal terms); *see also Wills, Trusts and Estates* § 10.4, at 423.

should pass to a deceased optionee's children even though an alternative disposition was expressed in the will. In *In re Estate of Passanisi*, 124 Misc. 2d 326, 476 N.Y.S.2d 456 (1984), the testatrix gave to one of her sons, Francisco, an option to purchase a home on the condition he pay his brother Michael $10,000 and stated that in the event Francisco "refuses or cannot pay" the $10,000 to Michael, then the property is devised to both sons share and share alike. The will included a clause very similar to the anti-lapse statute which the court held accomplished the same result as would have occurred under the anti-lapse statute. The New York court reasoned that it was *unlikely* the phrase "refuses or cannot pay" was intended to include the eventuality that the first optionee, Francisco, should be prevented from paying the $10,000 by reason of his death before the testator's. The court held the words contemplated only a living person's overt responses such as a voluntary renunciation. The court then held that the optionee's children succeeded to the option to purchase the home. The "cannot pay" language of the will in *Passanisi* is very similar in meaning to the phrase "does not exercise the option" contained in the will in the present case.

Although we recognize that reasonable minds could differ on what this testator intended, we conclude that the presumption that the anti-lapse statute applies has not been rebutted by clear evidence that the testator intended that his gift to Francis be conditioned on Francis' survival. We therefore conclude that the Court of Appeals was correct in holding that Washington's anti-lapse statute operates in its ordinary manner to transfer the option to purchase the "Home Place" from Francis to his children.

ISSUE TWO.

CONCLUSION. Francis' children, as the holders of the option to purchase the "Home Place", are entitled to the proceeds from the sale of crops growing at the time of the testator's death but not harvested until after they attempted to exercise the option.

Both the trial court and the Court of Appeals decided that the holders of the option to buy the farm were entitled to the "landlord's share" of the proceeds from the crops because they were harvested after the options were attempted to be exercised. We agree.

The will of Raymond Niehenke, after giving the options to purchase the "Home Place", provided:

> The contract price shall be paid in annual installments by crop payments of one-third (⅓) of all grain crops and one-third (⅓) of all pea crops produced thereon or as ordinarily seeded thereon, whichever is greater, less the current amount of principal and interest paid on any existing encumbrance. The minimum payment on each of the contracts shall be the annual interest due, and the entire contract price shall be paid within twenty (20) years from the date of my death. . . .
>
> The COLTON BRANCH of the OLD NATIONAL BANK OF WASHINGTON is hereby designated escrow agent, . . . to receive crop payments from the various optionees as above provided and to apply payment . . .

The parties agree that crops grown after the August 1987 harvest belong to whomever had the right to purchase the farm. However, the estate argues that it is entitled to the proceeds from the sale of crops growing at the time of the testator's death (February 12, 1987) and harvested in August 1987.

The estate first argues that the ownership of the farm did not vest in any devisee at the time of the testator's death pursuant to RCW 11.04.250, which relates to the vesting of real estate.[26] That is correct. This statute operates to vest title to certain property in the deceased

[26]"When a person dies seized of lands, tenements or hereditaments, or any right thereto or entitled to any interest therein in fee or for the life of another, his title shall vest immediately in his heirs or devisees, subject to his debts, family allowance, expenses of administration and any other charges for which such real estate is liable under existing laws. No administration of the estate of such decedent, and no decree of distribution or other finding or order of any court shall be necessary in any case to vest such title in the heirs or devisees, but the same shall vest in the heirs or devisees instantly upon the death of such decedent: *Provided*, That no person shall be deemed a devisee until the will has been probated. The title and right to possession of such lands, tenements, or hereditaments so vested in such heirs or devisees, together with the rents,

person's heirs or devisees immediately upon death. Since in this case only an *option to purchase* property was given to the testator's nephews, RCW 11.04.250 did not act to transfer title to *the farm* to the optionee at the time of the testator's death. Title vests in an optionee when, but not until, the option is exercised.[27] However, the applicability of this statute is not the determinative issue in the crop dispute.

It is unclear from the appellate record when and if a valid lease existed for the "Home Place", although it is undisputed that people other than the parties to this case were farming the "Home Place" when the disputed crops were grown and harvested. Because we conclude that the result will be the same whether or not there was a valid lease of the "Home Place", we need not remand for a clarification of this factual issue.

If the "Home Place" was leased at the time of the testator's death, then this court's decision in *In re Estate of Machlied*, 60 Wn.2d 354, 374 P.2d 164 (1962) resolves the crop issue. *Machlied* held that where land is leased, the whole product of land rented (although the rent is to be paid by a share of the crops) is solely in the tenant until the share of the lessor is separated and delivered.[28] If the land was leased, the crops did not belong to the testator at the time of his death. When the crops were harvested, *the*

---

issues and profits thereof, shall be good and valid against all persons claiming adversely to the claims of any such heirs, or devisees, excepting only the personal representative when appointed, and persons lawfully claiming under such personal representative; and any one or more of such heirs or devisees, or their grantees, jointly or severally, may sue for and recover their respective shares or interests in any such lands, tenements, or hereditaments and the rents, issues and profits thereof, whether letters testamentary or of administration be granted or not, from any person except the personal representative and those lawfully claiming under such personal representative." RCW 11.04.250.

[27] 96 C.J.S. *Wills* § 1104, at 834 (1957); 6 W. Bowe & D. Parker, *Page on Wills* § 51.16, at 137 (1962); *Robroy Land Co. v. Prather*, 95 Wn.2d 66, 71, 622 P.2d 367 (1980).

[28] *In re Estate of Machlied*, 60 Wn.2d 354, 360-61, 374 P.2d 164 (1962).

*landlord at that time* was entitled to the landlord's share. That claim is based on the ownership of the land at the time the right to the landlord's share of the crops accrues. This comports with the rule that growing crops are a part of the realty until severed and the right to possession of land is accompanied by ownership of unsevered crops growing thereon.[29]

The estate also argues that the testator did not intend to give growing crops when he gave the option to buy the farm and that if the testator intended to include crops in the option to purchase, he should have so specified. We disagree. Article 4 of the will stated that "[t]he contract price shall be paid in annual installments *by crop payments*" and that the escrow agent is "to receive crop payments *from* the various optionees". (Italics ours.) Otherwise the will is silent as to crops. This language indicates that the testator intended that the person exercising the option be entitled to the growing crops in order to pay the escrow agent the installments due on the sale.

Normally, a specific devise of realty passes crops growing at the time of a testator's death.[30] This same result follows here since the optionees attempted to exercise their option prior to the time the crops were harvested.

Title to land does not vest until an option to purchase it is exercised.[31] Until an option to purchase is exercised, the owner has the rights to crops growing on the land.[32] However, the 1987 crops (the only ones subject to

[29]*Machlied*, 60 Wn.2d at 360. *See also Benhart v. Gorham*, 14 Wn. App. 723, 724, 544 P.2d 141 (As between a lessor and a lessee, the title to crops follows actual possession of the land. Title is in the lessee until the crops are severed. The lessor takes title to his share only after harvest.), *review denied*, 87 Wn.2d 1001 (1976).

[30]6 *Page on Wills* § 59.17, at 428.

[31]6 *Page on Wills* § 51.16, at 137; 96 C.J.S. *Wills* § 1104, at 834; *Robroy*, 95 Wn.2d at 71.

[32]Washington State Bar Ass'n, *Real Property Deskbook* § 18.15, at 18-13 (1979).

dispute) were not harvested until August of 1987. By that time the optionees had given notice of their intent to exercise the option to purchase. The Court of Appeals held in this case:[33]

> Because the option was timely exercised but the estate refused to close the sale transferring title and possession of the property to Francis' children, they are entitled to the proceeds of the harvested crops which would have accrued in August, some 4 months after the option was exercised. Thus, they should have been landlords at the time of harvest and entitled to the landlord's one-third share.

This conclusion comports with other case law from this court. In *Northwest Television Club, Inc. v. Gross Seattle, Inc.*, 96 Wn.2d 973, 984-85, 640 P.2d 710 (1981), this court held that if closing had occurred as specified (in the earnest money agreement), the lessee would have become vendee on that date. The court then held that the parties should be placed as nearly as possible in the same position they would have occupied had the conveyance been made as specified in the contract. That case is analogous and supports our holding herein that since Francis' children were entitled to purchase the farm and attempted to exercise their option to purchase prior to harvest, they would have been the owners (and perhaps landlords) at the time the 1987 crops were harvested, and hence are entitled to the owner's share of the proceeds from the crops.

Accordingly, we affirm the holdings of the trial court and the Court of Appeals on this issue, and hold that the owner's share of the 1987 crop proceeds (less expenses) belongs to Francis' children as the owners of the option to purchase the farm.

ISSUE THREE.

CONCLUSION. The Court of Appeals erred in awarding attorneys' fees against the estate insofar as those fees relate to the primary issue regarding ownership of the option to purchase the "Home Place".

---

[33]*In re Estate of Niehenke*, 58 Wn. App. 149, 157, 791 P.2d 562, *review granted*, 115 Wn.2d 1015 (1990).

The trial court ruled that no attorneys' fees were to be awarded. However, in spite of the fact that attorneys' fees were denied in the trial court, the Court of Appeals decision in this case[34] states:

> The issues presented are whether the [trial] court erred in concluding Francis Niehenke's children have the right . . . to an award of fees and costs.

The Court of Appeals later concluded that attorneys' fees should be borne by the estate citing RCW 11.96.140, and remanded for a determination of reasonable attorneys' fees.[35]

RCW 11.96.140 provides that in probate proceedings:

> Either the superior court or the court on appeal, may, in its discretion, order costs, including attorneys fees, to be paid by any party to the proceedings or out of the assets of the estate, as justice may require.

An award of attorneys' fees under this statute is discretionary[36] and will not be overturned on review absent a clear showing of abuse of discretion.[37]

In awarding attorneys' fees to be paid by the estate, the Court of Appeals appears to be granting fees which relate to all issues including the primary issue regarding which party is entitled to exercise the option to purchase the farm. This is essentially a controversy between two rival claimants, however, and does not potentially benefit the estate. Only the much less important issue regarding the 1987 crop proceeds potentially benefits the estate.

---

[34]*Niehenke*, 58 Wn. App. at 152.

[35]*Niehenke*, 58 Wn. App. at 157.

[36]*In re Estate of Overmire*, 58 Wn. App. 531, 537, 794 P.2d 518 (1990); *McDonald v. Moore*, 57 Wn. App. 778, 783, 790 P.2d 213, *review denied*, 115 Wn.2d 1013 (1990).

[37]*In re Boris V. Korry Testamentary Marital Deduction Trust for Wife*, 56 Wn. App. 749, 755, 785 P.2d 484, *review denied*, 114 Wn.2d 1021 (1990); *In re Estate of Eubank*, 50 Wn. App. 611, 621, 749 P.2d 691 (1988).

Recent Washington cases suggest that it is inappropriate to assess fees against an estate when the litigation could result in no substantial benefit to the estate;[38] we agree. One authority, 4 W. Bowe & D. Parker, *Page on Wills* § 31.13, at 218 (1961), notes that it has been held that where the services of the attorneys are rendered solely for the benefit of certain parties and are not for the benefit of the estate, attorneys' fees should not be awarded out of the estate, even though the estate is incidentally benefited by having adverse claims decided.

The major issue in the case before us concerns the exercise of the option to purchase the farm and involves no substantial benefit to the estate; it is a contest between rival claimants to an estate asset. Therefore, it was inappropriate to award attorneys' fees from the estate to a prevailing party for that part of the action. Such an award would result in other uninvolved beneficiaries funding the attorneys' fees for the litigating parties. Although there will be situations where attorneys' fees are justly assessed against an estate, the Court of Appeals gives no indication, nor can we perceive any from this record, why the estate (and indirectly the other uninvolved beneficiaries) should bear the cost of the attorneys' fees for the litigating parties in this case.

Francis' children intimate that there is some wrongdoing on the part of Elmer Guske because he is litigating both as the executor for the estate and as a claimant to the option to purchase the farm. However, these were two separate actions prior to consolidation on appeal and separate counsel represent the estate and Elmer Guske for the two issues. Additionally, the will expressly provides that the executor of the will is not prohibited because of that role from exercising options given in the will. There is no showing of bad faith and the issue regarding ownership of the option is a debatable legal issue. We conclude that the trial

---

[38] *McDonald*, 57 Wn. App. at 783; *see also In re Estate of Fox*, 51 Wn. App. 498, 509, 754 P.2d 690 (1988); *Korry*, 56 Wn. App. at 755.

court did not abuse its discretion in denying attorneys' fees to all parties at the trial level and that the award of attorneys' fees on appeal (for fees incurred at the appellate level) are sustainable only for fees attributable to the crop issue. The award of fees against the estate with regard to fees that are attributable to the option issue is an abuse of discretion since there was no possible benefit to the estate on that issue.

We, therefore, affirm the trial court's denial of attorneys' fees. We hold that the Court of Appeals erred in awarding attorneys' fees which were incurred for litigation regarding the ownership of the option, but affirm that portion of appellate attorneys' fees assessed against the estate which are attributable to fees engendered by the crop issue. We deny all attorneys' fees for proceedings in this court.

One other of the trial court's conclusions merits discussion. The will provided that the option to buy the farm could be exercised by paying $52,000 within 20 years "together with interest on the unpaid balance at the rate of *four per cent (4%) per annum* from the date of my death." (Italics ours.) The trial court's finding of fact 2 recited the portion of the will which provided for 4 percent interest on the sale of the farm. Nonetheless, in conclusion of law 4, the trial court ordered that the unpaid contract balance would bear an interest rate of 12 percent per annum from the date of the testator's death. The reason for this appears to be that in the letter to the attorney for the estate from the attorney for Francis' children, the attorney stated that his clients wished to exercise the option in accordance with the terms of the will. However, the interest rate in that letter is misstated as 12 percent per annum from the date of testator's death. This appears to be simply an error in the letter. None of the parties offer any legal arguments why an error in the attorney's letter should supersede the express terms of the testator's will. We conclude, therefore, that the terms which control the exercise of the option are those dictated by the provisions of Raymond Niehenke's will.

The Court of Appeals decision with regard to ownership of the option to purchase the "Home Place" and with regard to the crop issue is affirmed; the trial court's denial of all attorneys' fees for fees incurred at the trial court level is also affirmed; and the award of attorneys' fees awarded on appeal is hereby modified so that the estate will bear only that portion of fees at the Court of Appeals which is attributable to the ownership of crops issue in that court; we deny any award of attorneys' fees in this court.

UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

DORE, C.J. (dissenting) — The question in the subject case is who is entitled to exercise the option to purchase the "Home Place". The majority holds that: purchase options are not always "personal" to the optionee; Washington's anti-lapse statute may apply to testamentary options; and that, applying the anti-lapse statute to the option in this case, the surviving children of Francis Niehenke, the testator's grandnieces and grandnephews, are entitled to exercise Francis Niehenke's purchase option. I agree that purchase options are not always "personal" to the optionee and that, in some cases, the anti-lapse statute may apply to testamentary options. I disagree, however, with the majority's application of the anti-lapse statute in this case. The anti-lapse statute should not be applied where, as here, the testator names alternate optionees and clearly expresses his intent that if a first optionee does not exercise an option, then alternate optionees will enjoy the right to exercise that option.

Raymond Niehenke's will provides that:

> I give, devise and bequeath unto the following relatives the option to purchase the farmlands as hereinafter set forth,
>
> . . ..
>    1. My nephew, FRANCIS NIEHENKE, shall have the option to purchase . . . the farmland and buildings commonly

described as the "Home Place" . . . In the event my nephew, FRANCIS NIEHENKE, does not exercise said option . . . my nephews, ALVIN GUSKE and ELMER GUSKE, shall have the option to jointly purchase said farmland upon the same terms and conditions . . .. [Devises to Edward Niehenke and Alvin Guske, two other of the testator's nephews, followed, and each option included an alternate optionee.]

It is my wish and desire that my farmland continue to stay within the family for as long as possible. In the event that the optionees above stated do not exercise said right of purchase, then, . . . any of the residuary beneficiaries shall have the right to purchase upon the same terms and conditions except that it shall be sold to the one offering the most money.

The options as above provided must be exercised within three (3) months from the date of my death, provided, . . . if the first optionee fails to exercise said option, then the alternate optionee shall have four (4) months from the date of my death in which to exercise said option . . ..

Clerk's Papers, at 8-10.

Raymond Niehenke bequeathed the residue of his estate to 11 other nieces and nephews "or their respective issue by right of representation". Clerk's Papers, at 11.

This court, when interpreting a will, must give effect to the "the supreme rule", the intent of the testator. *In re Estate of Mell*, 105 Wn.2d 518, 524, 716 P.2d 836 (1986); *In re Estate of Soesbe*, 58 Wn.2d 634, 636, 364 P.2d 507 (1961). That intent must be ascertained from the language of the will itself, if possible. *In re Estate of Bergau*, 103 Wn.2d 431, 435, 693 P.2d 703 (1985). The court considers the will in its entirety and construes specific provisions in light of the entire document. *In re Estate of Riemke*, 80 Wn.2d 722, 727, 497 P.2d 1319 (1972). Although the court may apply rules of construction and presumptions in its efforts to discern the testator's intent, all rules and presumptions are subordinate to that intent. *Riemke*. The court must not apply rules of construction or presumptions in a way that overrides the testator's evident purpose or dispositional scheme. *Riemke*, at 733; *In re Estate of Soesbe*, 58 Wn.2d at 637. Thus, it will not apply the presumption favoring application of Washington's anti-

lapse statute where the testator clearly provides for a different distribution. *In re Estate of Button*, 79 Wn.2d 849, 854, 490 P.2d 731, 47 A.L.R.3d 352 (1971); *see also In re Estate of Allmond*, 10 Wn. App. 869, 871, 520 P.2d 1388, *review denied*, 84 Wn.2d 1004 (1974).

The majority at page 640 asserts that:

> There is considerable doubt in the present case whether the testator intended to disinherit Francis' children in the event Francis predeceased him; . . ..

I do not think there is any doubt that the testator intended that the alternate optionees, not Francis' lineal descendants, exercise the purchase option in this case. First, the language of the option to purchase provision itself is clear and unambiguous. It explicitly states that if Francis does not exercise his option, for whatever reason, then Elmer and Alvin Guske "*shall* have the option to jointly purchase said farmland". (Italics mine.) The testator's clearly expressed desire that specifically named alternate optionees exercise the purchase option precludes application of the anti-lapse statute.

Secondly, designating alternate optionees while excluding lineal descendants of a primary optionee is consistent with the will as a whole. Raymond Niehenke's will contains a careful plan of disposition, which prefers nephews and nieces over other, more remotely related, family members. Thus, the primary and the alternate optionees named in the purchase option section are nephews. Further, the residuary beneficiaries to whom Raymond Niehenke gives the right to purchase, if the primary and alternate optionees do not exercise their options, are also Niehenke's nieces and nephews. The preference that the testator accorded nieces and nephews in his dispositional scheme conforms with his stated purpose to keep the farmland "within the family for as long as possible." Allowing the alternate optionees, rather than Francis Niehenke's descendants, to exercise the right to purchase thus further the testator's clear intent and realizes his dispositional purpose.

Finally, Raymond Niehenke was aware that any one of his nephews or nieces, including the primary optionees, might predecease him. In the residuary clause he refers to the beneficiaries "or their respective issue by right of representation". Clerk's Papers, at 11. Had the testator intended that Francis Niehenke's lineal descendants enjoy the right to exercise the purchase option, he could have provided "If my nephew, Francis Niehenke, or his respective issue by right of representation, do not exercise said option." The testator did not so provide, but the majority, without authority, rewrites the will, inserting language the testator did not use and overrides the testator's intent. This it cannot do.

The majority relies on *In re Estate of Passanisi*, 124 Misc. 2d 326, 476 N.Y.S.2d 456 (1984), in support of its conclusion. In *Passanisi*, at 326, the testatrix devised her home to her son, Francisco Passanisi:

"on condition, however, * * * that [he] shall pay my son MICHAEL PASSANISI, . . . Ten Thousand and 00/100 . . . Dollars, in any manner which is agreeable between my two sons."

The testatrix further stated that if Francisco "refuses or cannot pay" the $10,000, then she devised the property to both sons, share and share alike. Finally, the testatrix included a general substitutional gift article, which provided that if either Michael or Francisco should predecease her, leaving issue surviving, then that portion of the estate to which her son would have been entitled, had he survived her, should pass to his surviving issue.

First, the *Passanisi* court at page 330 based its holding on specific "quoted words . . . [read] in the context in which they appear . . .". The language in this case, and the context in which it appears, is entirely different than that in the *Passanisi* case. Secondly, the testatrix in *Passanisi* did not share the intent and purpose of the testator in this case. Thirdly, the testatrix in *Passanisi* included a general substitutional gift provision in her will, in which she designated the surviving issue of the primary beneficiaries as

alternate recipients of the option. The testator in this case included a residuary clause in his will, but chose not to designate the surviving issue of all the primary optionees as recipients. The testator excluded two of the primary optionees, Francis Niehenke and Edward Niehenke, and their respective issue as recipients. This inequity apparently offends the majority. Majority, at 640-41. The majority, however, cannot override the testator's will to achieve what it believes is a more just result. The *Passanisi* case is distinguishable from the subject case on several grounds, and the majority's reliance on *Passanisi* is misplaced.

The majority also relies on the reasoning of *Tuecke v. Tuecke*, 257 Iowa 199, 131 N.W.2d 794 (1964): if Francis survived, he probably would have exercised his option and, on his death, he probably would have devised the "Home Place" to his offspring. This reasoning is entirely speculative. Further, the *Tuecke* court based this hypothetical on different facts than are presented here. In *Tuecke*, at 201, the testator devised to his son, Alfred, "the option . . . to purchase the . . . interest in my farm . . .". The testator in *Tuecke* did not designate alternate optionees whom he wished to exercise the option. In these circumstances, the court concluded that the purchase option was a valuable property right which could descend to Alfred's children and which was subject to the anti-lapse statute. *Tuecke v. Tuecke*, 257 Iowa 199, 131 N.W.2d 794, 795, 797 (1964). The *Tuecke* court's reasoning is not persuasive and cannot support the majority's reasoning in this case.

## CONCLUSION

In summary, I believe that the clear language of Raymond Niehenke's will devises to the alternate optionees the right to purchase the "Home Place". The majority frustrates the testator's intent and scheme of distribution, set forth in the clear language of his will, when it applies the anti-lapse statute and allows Francis Niehenke's descendants to exercise the option to purchase the "Home Place". I would reverse and hold that:

1. The alternate optionees, Elmer and Alvin Guske, are the rightful holders of the option to purchase the "Home Place";

2. The alternate optionees, as holders of the option to purchase, were entitled to the "landlord's share" of the proceeds from the crops growing at the time of the testator's death and harvested in August 1987; and

3. The trial court properly denied attorney fees. The Court of Appeals erred when it awarded attorney fees incurred during litigation regarding ownership of the option to purchase, because litigation of this issue could not result in benefit to the estate. The parties are not entitled to attorney fees for proceedings before this court.