IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| INDIRA RAI-CHOUDHURY,<br><br>                              Appellant,<br><br>         v.<br><br>STEPHANIE INSLEE, in her official capacity as personal representative of the Estate of Margaret Rai-Choudhury,<br><br>                              Respondent. | No. 78696-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br>FILED: October 21, 2019 |

CHUN, J. — In the year before her death, Margaret Rai-Choudhury executed a will excluding her daughter, Indira Rai-Choudhury, as a beneficiary. Indira[1] challenges the will, claiming that an insane delusion materially affected Margaret's disposition of her property. Indira additionally claims the trial court abused its discretion by denying her motion for reconsideration and CR 56(f) motion for a continuance, and she requests fees on appeal. Indira does not raise an issue of fact as to whether an insane delusion caused Margaret to disinherit her. And she fails to show that the trial court manifestly abused its discretion in denying her CR 56(f) motion. Additionally, she does not adequately brief whether the trial court erred by denying her motion for reconsideration. Accordingly, we affirm and decline to award fees on appeal.

---

[1] For clarity, we use first names when referring to members of the Rai-Choudhury family. We intend no disrespect.

## I. BACKGROUND

In 1999, Margaret executed a Last Will and Testament that included Indira as a beneficiary.

Margaret suffered a mild closed head injury after she fell from a stepstool in April 2015.

In early May 2015, Margaret told a social worker that Indira suggested to her that "she[2] was being followed, her phone was bugged and she needed to receive calls on her cell phone not her land line." Margaret believed that Indira's "odd behavior" suggested she was having a "meltdown." Margaret also harbored suspicions about the intentions of her husband, Prosenjit Rai-Choudhury (Jit); after sensing a mild gas leak, she questioned whether he tried to kill her. She feared that Indira may also have "monetary motives" because she heard Jit telling Indira that he planned to bequeath her his assets.

Then, on May 11, 2015, Margaret went to the hospital for treatment for a cat bite. A nurse reported that Margaret reported abuse and expressed concerns about Jit and Indira. The nurse also stated that Margaret appeared distrustful of the nurse.

A few days later, Jit contacted the hospital with concerns about Margaret. Jit said that he and Indira were worried about Margaret's cognitive status because she had uncharacteristically left town after her hospitalization for the cat bite. Jit further stated that he feared prescribed medications were negatively

---

[2] The social worker's note does not make clear whether Margaret was referring to herself or her daughter.

affecting Margaret. Jit said that when Margaret was returning home from a trip to Canada on May 1, Margaret said she thought the CIA was tracking Indira and that a car was following Jit and Margaret. Margaret then stopped speaking to Indira until a few days before she passed away.

Margaret filed a petition for dissolution of her marriage to Jit on July 9, 2015. Because of her plans to divorce, Margaret wanted to update her estate plans. Margaret told her estate attorney, Steve Avery, that she did not want Jit or Indira to have any portion of her estate or any power over her person or property during her lifetime. Margaret executed her new will on July 21, 2015. The new will gave her estate to a friend, Linda Borland; the University of British Columbia (UBC); and her eldest grandson, Khashon:

## ARTICLE 2
## GIFTS

**2.1 SPECIFIC BEQUESTS:**

> I give to LINDA BORLAND of Bellingham, Washington ten thousand dollars ($10,000.00).

**2.2 ESTATE RESIDUE:** I give, devise and bequeath the rest, remainder and residue of my estate, of whatsoever nature and wheresoever situated to the following:

Fifty percent (50%) shall pass to the University of British Columbia (UBC) to be awarded as scholarships to medical students at UBC who are Canadian citizens, have financial need, and have a desire to help the poor.

Fifty percent (50%) shall pass to the then-trustee of the KHASHON HASELRIG Grandchild's Trust for the benefit of my grandson KHASHON HASELRIG to be distributed pursuant to Article 3 below. If KHASHON HASELRIG does not survive me, his share shall pass to the University of British Columbia to be awarded as scholarships to medical students at UBC who are Canadian citizens, have financial need, and have a desire to help the poor.

The will did not provide for Indira or Jehan, Margaret's other grandson. Two witnesses attested to the will and declared that Margaret appeared to be of sound mind and not under any duress or undue influence.

Margaret and Jit finalized their divorce in April 2016. On November 25, 2016, Margaret passed away. Indira filed a complaint on March 20, 2017, to invalidate Margaret's will based on lack of capacity.

Stephanie Inslee, the personal representative of Margaret's estate (Estate), filed a motion for summary judgment on April 9, 2018. The Estate presented declarations from various people in Margaret's life. One from William Tuttle, Margaret's financial adviser since 2011, provided that, in his opinion, "Margaret understood her finances, and knew at all times the nature and extent of her property and investments as well as her relationships, or lack thereof, with family members." Tuttle stated that since 2011, Margaret had expressed that she did not want Indira to inherit any money from her.

Inslee also submitted declarations from Gregory Kosanke, Margaret's divorce lawyer, and Avery, her estate attorney, which provided that they knew Margaret to be of sound mind and not suffering from any delusions. Both attorneys stated that Margaret told them she did not want to leave an inheritance for Indira.

Finally, the Estate supported its motion for summary judgment with declarations from Debbie Norrish and Borland. Norrish, Margaret's niece, said she spoke with Margaret on the phone approximately once a week and was never concerned for Margaret's capacity or cognitive abilities. Norrish provided

4

that Margaret had said on several occasions that she did not want Indira to have any control over her money after she died. Borland, a good friend, lived with Margaret at the time she executed her will and stated that she also never had concern for Margaret's capacity or cognitive abilities. Borland further stated that Margaret's decision to not leave any inheritance to Indira was consistent with conversations she had had with Margaret in the years prior to Margaret's divorce.

Indira filed a response to the motion for summary judgment on May 2, 2018. To argue a genuine issue of material fact precluded summary judgment, Indira pointed to Margaret designating her as a beneficiary in the 1999 will. Indira claimed that she and her mother had had a good relationship—that they would speak every few days and give loving notes and cards to each other. After Margaret's hospitalization in May 2015, however, Indira said Margaret stopped speaking to her. Indira claimed that Margaret's divorce from Jit, her thoughts that the CIA was tracking her, and her uncharacteristically leaving town demonstrated that she was suffering from delusions that caused her to act impulsively. Indira said Margaret incorrectly believed that she and her younger son, Jehan, had drug addiction problems. Indira said Margaret also falsely believed that Margaret's brothers had attended UBC. Indira, however, did not submit any evidence that directly challenged Tuttle and Borland's declarations that Margaret had stated she wanted to exclude Indira from her will in the years prior to 2015.

On May 3, 2018, Indira filed a Second Amended Complaint alleging that Margaret was under an insane delusion when she executed her July 2015 will and that the will was a product of undue influence.

5

During a motion hearing on May 11, 2018, Indira asked the court for a continuance to conduct further discovery. The court granted a continuance, but limited discovery to deposing Avery, Margaret's estate attorney, and to obtaining additional medical records.

About a month later, on June 15, 2018, the trial court held a hearing on the summary judgment motion. Indira presented Avery's deposition, additional medical records, and an expert report opining that Margaret's delusions directly contributed to her decision to disinherit Indira. The court noted that the report did not include a proper attestation or comply with ER 703 and refused to consider it. The court determined the evidence failed to establish an issue of fact as to whether an insane delusion caused Margaret to disinherit Indira or whether anyone unduly influenced her.[3] The court granted the Estate's motion for summary judgment.

Ten days later, on June 25, 2018, Indira moved for reconsideration of the court's order granting summary judgment. In addition to asking the court to reconsider its summary judgment ruling, Indira asked it to consider the expert report and to grant a continuance under CR 56(f) to allow additional discovery. The court denied Indira's motion for reconsideration.

Indira appeals.

---

[3] On appeal, Indira's briefing addresses only the trial court's decision regarding the alleged insane delusion.

## II. ANALYSIS

### A. Summary Judgment

Indira argues she presented evidence to establish an issue of material fact regarding whether Margaret suffered from an insane delusion when she executed her July 2015 will. The Estate argues Indira did not submit admissible evidence to raise such an issue of fact. We determine the trial court did not err by granting summary judgment for the Estate.

"We review de novo a trial court's decision to grant summary judgment." Modumetal, Inc. v. Xtalic Corp., 4 Wn. App. 2d 810, 822, 425 P.3d 871 (2018). Courts grant summary judgment if no genuine issue exists as to any material fact. Modumetal, Inc., 4 Wn. App. 2d at 822. We draw all facts and reasonable inferences in "the light most favorable to the nonmoving party." Modumetal, Inc., 4 Wn. App. 2d at 822. A court should grant summary judgment if reasonable people could reach only one conclusion. Modumetal, Inc., 4 Wn. App. 2d at 822-23.

"Where a will, rational on its face, is shown to have been executed in legal form, the law presumes that the testator had testamentary capacity and that the will speaks [their] wishes." In re Meagher's Estate, 60 Wn.2d 691, 692, 375 P.2d 148 (1962). The party challenging the will bears the burden of establishing invalidity by clear, cogent, and convincing evidence. Meagher, 60 Wn.2d at 692. When determining whether a party meets this burden in the context of summary judgment, we "must determine whether, viewing the evidence in the light most favorable to the nonmoving party, a rational trier of fact could find that the

nonmoving party supported [their] claim with clear, cogent, and convincing evidence." Woody v. Stapp, 146 Wn. App. 16, 22, 189 P.3d 807 (2008). A party presents clear, cogent, and convincing evidence when they show the ultimate fact in issue to be highly probable. In re Estate of Watlack, 88 Wn. App. 603, 610, 945 P.2d 1154 (1997).

But a court may invalidate a will if a party shows by clear, cogent, and convincing evidence that at the time the testator executed the will, they suffered under an insane delusion that materially affected the disposition of the will. Watlack, 88 Wn. App. at 609-10. Regarding what constitutes an insane delusion, Division Three of this court has stated as follows:

> An "insane delusion" is not well defined by case law. It has been defined as a false belief, which would be incredible in the same circumstances to the victim if [they] were of sound mind, and from which [they] cannot be dissuaded by any evidence or argument. It was later described as a condition of such "aberration as indicates an unsound or deranged condition of the mental faculties . . . ." A belief resulting from a process of reasoning from existing facts will not be an insane delusion, regardless of whether the reasoning is imperfect or the conclusion illogical.

Watlack, 88 Wn. App. at 610 (internal citation omitted). Thus, "[a] prejudice or dislike that a testator might have for a relative is not ground for setting aside a will unless the prejudice and dislike cannot be explained on any other ground than that of an insane delusion." In re Trust & Estate of Melter, 167 Wn. App. 285, 312, 273 P.3d 991 (2012). On appeal, Indira seems to claim that Margaret suffered from an insane delusion because Margaret (1) believed the CIA was tracking her, and (2) stopped talking to Indira in May 2015.

8

First, as to delusions about the CIA, Indira presents evidence of Margaret having paranoia and beliefs regarding the CIA around May 2015. Margaret, however, did not execute her will until July and Indira did not submit any evidence to suggest that such delusions existed at the time Margaret executed her July 2015 will. Indira also fails to explain how any delusions about the CIA would cause Margaret to disinherit her.

Second, as to Margaret not speaking to Indira, viewing the evidence in the light most favorable to Indira, she and her mother had a good relationship.[4] They expressed love for each other on the phone and through emails and cards. Indeed, Margaret included Indira in the will she executed in 1999. But in May 2015, Margaret stopped speaking to Indira. Jit also said that Margaret stopped talking to Indira in May 2015 without any apparent reason.

Though the evidence shows a deterioration of Indira's relationship with her mother in May 2015, Indira fails to raise an issue of fact as to whether an insane delusion affected the disposition in Margaret's July 2015 will. Indira does not point to any specific false belief that Margaret had that could constitute an insane delusion.[5] For example, while a court may invalidate a will because a testator,

_____

[4] Citing RCW 5.60.030, the Estate suggests that the panel cannot consider evidence provided on this issue through Indira, an interested party. Though the Estate objected to Indira's declarations below, the court considered them when deciding the summary judgment motion. The Estate did not cross-appeal this issue. Accordingly, we do not address the issue of whether the trial court properly considered the declarations. See State v. Sims, 171 Wn.2d 436, 441-42, 256 P.3d 285 (2011) (holding the State could not challenge the criminal defendant's sentence as a whole when it did not cross-appeal and the defendant appealed only a single sentencing condition).

[5] Based on Tuttle's declaration, Indira asserts that Margaret disinherited her and Jehan because Margaret believed they had addiction issues. But the record indicates Margaret held this belief the entire time the financial advisor represented her, which dated back to 2011. Thus, this evidence also does not raise an issue of fact as to whether Margaret began to suffer from an insane delusion in May 2015 that affected her July 2015 will.

9

due to an insane delusion, falsely believes a child has wronged them, Indira does not indicate how Margaret believed that Indira had wronged her. See Watlack, 88 Wn. App. at 610-11 (upholding court order invalidating will because father had insane delusion that his child had stolen money from him); In re Klein's Estate, 28 Wn.2d 456, 472, 183 P.2d 518 (1947) (upholding court order invalidating will because mother had insane delusion that daughter tried to kill her). Indira presents evidence that Margaret stopped speaking to her around May 2015; this does not raise an issue as to whether Margaret suffered from an insane delusion.

Accordingly, we determine Indira fails to meet her burden to raise an issue of fact as to whether a rational trier of fact could find that the Margaret suffered from an insane delusion that affected the disposition in her July 2015 will. The trial court did not err by dismissing the claim on summary judgment.[6]

---

[6] At the summary judgment hearing, the court refused to consider an expert medical opinion that Indira submitted because it did not include a proper attestation and did not meet ER 703's standards. At the hearing on Indira's motion for reconsideration, the trial court stated that it was "inclined to disallow" the new expert report that Indira submitted with proper attestation and complying with ER 703. The court then went on to note that, even if it did consider the report, Indira still failed to present evidence that raised an issue as to whether Margaret suffered from an insane delusion at the time she executed her July 2015 will. Accordingly, it denied her motion for reconsideration.

In the argument section of her brief, Indira does not discuss the medical opinion and her only discussion of the motion for reconsideration provides the standard of review. Because Indira does not adequately brief whether the trial court erred by not considering the expert medical opinion or by denying her motion for reconsideration, we do not address these issues. See RAP 10.3 (requiring the written argument to contain "citations to legal authority and references to relevant parts of the record"); Greensun Grp., LLC v. City of Bellevue, 7 Wn. App. 2d 754, 780 n.11, 436 P.3d 397 (2019) (noting a party abandons assignments of error that they do not argue in their brief).

B. CR 56(f) Motion for a Continuance

Indira next contends that the trial court manifestly abused its discretion by denying her motion for a continuance under CR 56(f).[7] We conclude the trial court did not manifestly abuse its discretion.

We review a trial court's denial of a motion for continuance for a manifest abuse of discretion. Gross v. Sunding, 139 Wn. App. 54, 67-68, 161 P.3d 380 (2007). "A decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts, adopts a view that no reasonable [judge] would take, and arrives at a decision outside the range of acceptable choices." State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (internal quotation marks and citations omitted).

A trial court may deny a party's motion for a continuance under CR 56(f) if "'(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.'" Gross, 139 Wn. App. at 68 (quoting Turner v. Kohler, 54 Wn. App. 688, 693, 775 P.2d 474 (1989)).

---

[7] Although not argued by the Estate, we note that Indira's CR 56(f) motion may have been untimely. It appears Indira untimely filed the motion because she did so after the court had granted summary judgment. Because CR 56(f) enables a court to "refuse the application for judgment or may order a continuance" to permit additional discovery before it rules, the rule likely requires a party to make their CR 56(f) motion prior to the court ruling on summary judgment.

Additionally, Indira originally moved for a continuance under CR 56(f) on May 11, 2018. She then again requested a continuance under CR 56(f) in her motion for reconsideration. As this second request sought a continuance to obtain the same discovery, the second request essentially constituted a motion for reconsideration of the court's May 11, 2018 ruling. Because Indira made this motion for reconsideration more than 10 days after the court ruled on her original request, the motion appears untimely on this ground as well. CR 59(b).

When Indira first requested the continuance in May 2018, the court granted it for her to obtain medical records and depose Margaret's estate attorney. It, however, did not permit her to depose Margaret's neighbors, her counselor, or two people prepared to state that Indira and Jehan were not drug users. The court disallowed this discovery because it believed that this additional evidence would not "shed light on [Margaret's] condition at the time she was preparing and signing her will."

Indira claims the additional discovery would show that the neighbor believed Margaret disinheriting Indira was contrary to Margaret's feelings, that Indira was not a drug user, and would provide information on Margaret's relationship with Indira before, during, and after May 2015. The court believed that the evidence would not have sufficient value for establishing an insane delusion or showing a link between that delusion and Margaret's disposition of her property. Given that the evidence would not shed light on Margaret's medical state or her beliefs regarding her will at the time she executed it, the court's determination was reasonable. Accordingly, the trial court did not manifestly abuse its discretion by denying Indira's motion for a continuance.

C. Fees on Appeal

Indira requests fees on appeal pursuant to RCW 11.96A.150. We deny the request.

Under RCW 11.96A.150(1) and (2), appellate courts have the discretion to award costs and reasonable attorney fees in estate proceedings, including to the nonprevailing party. In re Jolly's Estate, 3 Wn.2d 615, 628, 101 P.2d 995 (1940)

(awarding fees to the nonprevailing party). The court may award fees to any party "in such amount and in such manner as the court determines to be equitable." RCW 11.96A.150(c). "The award may be paid by a party from the estate assets or from a nonprobate asset that is the subject of the proceedings." In re Estate of Burks, 124 Wn. App. 327, 333, 100 P.3d 328 (2004) (citing RCW 11.96A.150(1)(a)-(c)). But awards against the estate are inappropriate where an attorney renders their services solely for the benefit of certain parties and not for the benefit of the estate, even though the litigation may incidentally benefit the estate by deciding adverse claims. In re Estate of Niehenke, 117 Wn.2d 631, 648, 818 P.2d 1324 (1991).

This case did not include all the beneficiaries of Margaret's will and Indira's attorney's services only benefitted her. Thus, to award Indira attorney fees from the estate would inappropriately require the uninvolved beneficiaries to fund her litigating costs. See Niehenke, 117 Wn.2d at 648. We decline to award Indira fees on appeal.

Affirmed.

_Chun, C.J._

WE CONCUR:

_____          _Leach, J._

13