IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| In the Matter of the Estate of<br><br>ROBERT L. BACA,<br><br>         Deceased. | No. 84613-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |
| --- | --- |

CHUNG, J. — This is the second appeal involving Edward (Nick) Rivas and the estate of his deceased brother Robert Baca (the Estate). Rivas appeals a trial court order authorizing the Estate's personal representative to sell Baca's home to a third party. Because this court previously decided as a matter of law that the personal representative was authorized to sell the property on the open market to satisfy the Estate's debts, we reject Rivas's challenge under the law of the case doctrine. We therefore affirm.

FACTS

This court's previous unpublished opinion set forth in detail the facts leading to the first appeal. In the Matter of the Estate of Baca, No. 82684-1-I, slip op. (Wash. Ct. App. July 5, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/826841.pdf. That appeal dealt with the same asset at issue in this appeal, a home located at 3709 S. 162nd Street in SeaTac (the 3709 Property), in which Robert Baca and his long-time

committed partner Roseanne Russell resided for decades. Estate of Baca, slip op. at 1-2. Baca and his brother Nick Rivas owned the property next door at 3713 S. 162nd Street (the 3713 Property), where Rivas resides. Id. at 3 n.1.

In his will,[1] Baca made two "Specific Gifts" relating to his interest in the 3709 Property:

> To Roseanna Russell of Seattle, Washington, for their own use absolutely, the following: during her lifetime[,] a residence at 3709 S 162nd St. . . . with funds from this [Estate] to pay maintenance, mortgage, taxes, and her health expenses.

> To Nick Rivas of Seattle, Washington the first right of refusal to purchase 3709 S 162nd St in Seattle[,] WA at $135,000.00 for perpetuity or at the dissolution of this [Estate], of which the funds from the sale are deposited into this [Estate] and Roseanna Russell will reside there for the remainder of her lifetime.

The document specified that "Any Specific Gift that no longer exists as part of this [Estate] will be void. No Specific Gifts will be distributed until all applicable legal debts and obligations of [Baca] are resolved."

At the time of Baca's death, the 3709 Property remained encumbered by a mortgage of $101,978.08. Id. at 2. As the Estate does not have the money to pay off the existing mortgage, in January 2021, the Estate's successor personal representative Amber Stratton moved for authorization to sell the 3709 Property because Baca's mortgage lender had threatened to foreclose unless the Estate paid off the mortgage in full.[2] Estate of Baca, slip op. at 3. Rivas objected to the sale, asked the court to allow him to exercise his right of first refusal to purchase the property for $135,000. Id. We

---

[1] Baca created "The Robert L. Baca Revocable Living Trust," which was admitted into probate as a will. Accordingly, where the original will uses the word "Living Trust," we have substituted the word "Estate."
[2] Baca's mortgage lender contended that Baca's death triggered the due-on-sale clause of the deed of trust that it had recorded in 2008 against the 3709 Property to secure a home loan to Baca.

held that Baca's specific gifts to Rivas and Russell are subject to the Estate's mortgage debt and, because the Estate must sell the 3709 Property to pay off the debt, both gifts will be voided by the sale. We therefore affirmed the probate court's order allowing the Estate to sell the 3709 Property on the open market. Id. at 10.

On November 23, 2021, while the appeal was pending, the Estate entered into a residential purchase and sale agreement (PSA) with Hoang Evergreen Estate LLC (HEEL).[3] Pursuant to the terms of the PSA, HEEL agreed to purchase the 3709 Property for $375,000. On February 4, 2022, the superior court entered an order granting the personal representative's motion to confirm the sale. The court also ruled that the Estate may not alter the terms of the HEEL PSA without providing 14 days' notice to the court and the parties. Rivas did not appeal that order.

On August 4, 2022, Rivas presented a PSA seeking to purchase the 3709 Property for $228,000 (the $135,000 right of first refusal price in Baca's will plus the approximate value of the outstanding mortgage). On August 29, 2022, the Estate moved the probate court for instructions to sell the 3709 Property to HEEL and not to Rivas. On September 6, 2022, the Estate and HEEL signed an addendum to the original HEEL PSA agreeing to purchase and sell the 3709 Property for a reduced price of $355,000.

On September 23, 2022, the probate court issued an order authorizing the Estate "to sell the [3709] Property to HEEL pursuant to the HEEL PSA and the Addendum thereto and not sell the [3709] Property to [Rivas]." In so ruling, the probate court cited our holding that Rivas is not entitled to exercise his right of first refusal to purchase the

---

[3] Rivas did not post a supersedeas bond, so the trial court did not stay the probate proceedings during the appellate proceedings.

property "until the underlying debt is extinguished." Because the mortgage debt remained unpaid, the probate court reasoned, Rivas's right of first refusal had not yet vested. The court also found that "[t]he terms of the PSA and Addendum are reasonable" and "[i]n light of the competitive real estate market, this is the best sale price that [the Estate] was able to achieve."

Rivas appeals.

ANALYSIS

I.      Order to Sell Property to HEEL

As a preliminary matter, Russell argues that this appeal should be dismissed as there is no basis either for an appeal as a matter of right or for discretionary review. This is so, she contends, because the order directing the personal representative to sell the 3709 Property to HEEL merely implemented the final order we affirmed in Estate of Baca, and Rivas offers no authority under which this court may correct itself in a "follow-up appeal." Russell further argues that the appeal is moot. We decline to dismiss the appeal and, therefore, address the merits.

Rivas argues that the trial court erred in ordering the Estate to sell the 3709 Property to HEEL, thereby depriving him of his right of first refusal. We conclude that the law of the case doctrine precludes Rivas from relitigating this issue.

"In its most common form, the law of the case doctrine stands for the proposition that once there is an appellate holding enunciating a principle of law, that holding will be followed in subsequent stages of the same litigation." Roberson v. Perez, 156 Wn.2d 33, 41, 123 P.3d 844 (2005). The law of the case is a discretionary doctrine. Folsom v. County of Spokane, 111 Wn.2d 256, 264, 759 P.2d 1196 (1988). Its application "may be

avoided where the prior decision is clearly erroneous, and the erroneous decision would work a manifest injustice to one party." Roberson, 156 Wn.2d at 42.

We previously held that "both the life estate that Baca gifted to Russell and the right of first refusal that he gifted to Rivas are subject to the Estate's mortgage debt." Estate of Baca, slip op. at 10. We reasoned as follows:

> In [In the Matter of the Estate of] Irwin, this court held that under RCW 11.12.070, a life tenant who inherits this interest by will is responsible for paying mortgage payments during her life estate if the will does not provide other funds to cover this debt. 10 Wn. App. 2d 924, 929, 450 P.3d 663 (2019)). Although it appears Baca believed other funds from his estate would be sufficient to pay for the maintenance, mortgage, and taxes on the home, the parties agree he did not anticipate that his lender would accelerate the mortgage debt and demand that it be paid in full on his death. Neither the Estate nor Russell have sufficient funds or other assets with which to cover this debt. And neither Russell nor Rivas are entitled to any specific gift until this debt is extinguished. For this reason, the court did not abuse its discretion in ordering the sale of the 3709 Property.
>
> Baca's will provides that "[n]o Specific Gifts will be distributed until all applicable legal debts and obligations of the Grantor are resolved." It also states that if any specific gift "no longer exists as part of this [will]," the gift "will be void." As a result, Russell cannot inherit a life estate, and Rivas cannot inherit a right of first refusal, unless the 3709 Property remains an asset of the Estate after the mortgage debt is paid off. Because the Estate must sell that property to pay off the mortgage, it will not be an Estate asset and both gifts will become void at the time of this sale.

Estate of Baca, slip op. at 8.

Because this court previously decided that the personal representative was authorized to sell the property to satisfy the Estate's debts, we must follow that holding here unless Rivas can establish that prior decision is clearly erroneous, and the erroneous decision would work a manifest injustice.

Rivas urges us to hold that no beneficiary of any will, including the will at issue here, is required to pay a pre-existing debt of an estate in order for a bequest to vest,

5

relying on In re Estate of McNulta, 168 Wash. 397, 12 P.2d 389 (1932) and McDonald v. Moore, 57 Wn. App. 778, 790 P.2d 213 (1990). He asserts that the following footnote in our decision conflicts with those cases:

> While in theory either Russell or Rivas could preserve their specific gift by paying off the mortgage debt, neither sought such relief from the probate court or this court. Nor has either suggested that they have the right to pay off this or any other Estate debt to preserve this Estate asset.

Estate of Baca, slip op. at 8 n.3.

But this language was not necessary in arriving at our holding, so it is dicta. See Protect the Peninsula's Future v. City of Port Angeles, 175 Wn. App. 201, 215, 304 P.3d 914 (2013) ("[a] statement is dicta when it is not necessary to the court's decision in a case."). Moreover, the wills in McNulta and McDonald did not have provisions comparable to the one in Baca's will that expressly provided that "[n]o Specific Gifts will be distributed until all applicable legal debts and obligations of the Grantor are resolved" and "[a]ny Specific Gift that no longer exists as part of this Estate will be void."[4] Nor have the facts changed since our prior decision; the mortgage has not been paid or otherwise resolved. Rivas cannot establish that the prior decision is clearly erroneous and would work a manifest injustice.

Rivas also argues that the trial court's February HEEL PSA expired by its terms on November 24, 2021, long before the superior court entered its February 4, 2022 order confirming sale. He therefore contends that the February 4, 2022 order was moot ab initio and there was nothing for the trial court to approve. We disagree.

---

[4] Rivas contends that the word "resolved" in this context does not equate with "paid in advance" and therefore allows for a variety of solutions to the various legal obligations and debts of the Estate. Rivas did not raise this argument below, and we need not address it. See State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007) (citing RAP 2.5(a)).

"Purchase and sale agreements, also called 'earnest money agreements,' are contracts 'whereby essentially an owner promises to convey, and the purchaser to pay . . . for real estate.' " Geonerco, Inc. v. Grand Ridge Properties IV LLC, 146 Wn. App. 459, 465, 191 P.3d 76 (2008) (quoting 18 WILLIAM B. STOEBUCK AND JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 16.1, at 215 (2d ed. 2004)). "The touchstone of contract interpretation is the parties' intent." Tanner Elec. Coop. v. Puget Sound Power & Light Co., 128 Wn.2d 656, 674, 911 P.2d 1301 (1996). "In Washington, the intent of the parties to a particular agreement may be discovered not only from the actual language of the agreement, but also from 'viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of the respective interpretations advocated by the parties.' " Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc., 120 Wn.2d 573, 580, 844 P.2d 428 (1993) (quoting Berg v. Hudesman, 115 Wn.2d 657, 667, 801 P.2d 222 (1990)).

Rivas correctly notes that the HEEL PSA contains a "time is of the essence" clause. Such clauses are "generally treated as evidence of a mutual intent that specified times of performance be strictly enforced." Mid-Town Ltd. P'ship v. Preston, 69 Wn. App. 227, 233, 848 P.2d 1268 (1993); Nadeau v. Beers, 73 Wn.2d 608, 610, 440 P.2d 164 (1968) (when an agreement makes time of the essence, fixes a termination date, and there is no conduct giving rise to estoppel or waiver, the agreement becomes legally defunct upon the stated termination date if performance is not tendered).

Significantly, however, the HEEL PSA also contained the following clause:

> Sale contingent upon no future adverse court rulings. Closing not to commence until all motions and appeals have been resolved. In the event court rulings have not been satisfied before the closing date, an automatic 5 day extension will be granted. If additional time is needed the selling and listing agent will work to outline a new date for all parties.

This language clearly demonstrates the parties' intent to be bound by the HEEL PSA. Rivas did not appeal the February 2, 2022 order confirming the sale. Moreover, the September 6, 2022 Addendum specified that both parties remain ready and willing to close the sale "as soon as all legal issues related to the purchase of the Property involving [Rivas] have been adjudicated against him and all his appeal periods and remands therefrom, if any, have expired." The language of the agreement and the parties' conduct demonstrate the parties' intent to waive the expiration date of the original HEEL PSA and to complete the purchase.

## II.    Attorneys' Fees

The Estate, Russell, and Rivas each request an award of attorney fees and costs incurred in both the superior court and this court under RCW 11.96A.150(1), which states that "the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings." Attorney fees may be awarded "in such amount and in such manner as the court determines to be equitable."

The Estate is the prevailing party in this appeal. We exercise our discretion to award the Estate attorney fees and costs from Rivas, subject to its compliance with RAP 18.1.

Russell also requests attorney fees and costs under RAP 18.9, arguing that this appeal is frivolous. An appeal is frivolous when it presents no debatable issues on

which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal. Stiles v. Kearney, 168 Wn. App. 250, 267, 277 P.3d 9 (2012). Applying that standard, we conclude that the appeal is not frivolous and therefore deny Russell's request for attorney fees on appeal.

Affirmed.

_Chung, J._

WE CONCUR:

_Díaz, J._

_Feldman, J._